798 A.2d 1132

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Thomas V. McCOY.

Misc. Docket (Subtitle AG) No. 14, Sept. Term, 2001.

Court of Appeals of Maryland.

May 16, 2002.

Melvin Hirshman, Bar Counsel, Dolores Ridgell, Asst. Bar Counsel and Raymond A. Hein, Asst. Bar Counsel for Atty. Grievance Com'n of Maryland, for petitioner.

No argument on behalf of respondent.

Argued Before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

In this case, Bar Counsel, acting at the direction of the Review Board, *see* Maryland Rule 16–709,[1] and prompted by a complaint filed with his office and the disbarment of Thomas V. McCoy, the respondent, a member of the Delaware bar, by the Supreme Court of Delaware, pursuant to a complaint filed by clients, whom the respondent represented in a medical malpractice action, and with one of whom he had financial dealings, filed a Petition For Disciplinary Action against the respondent, charging the respondent with various, and multiple, violations of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812, seeking reciprocal and other sanctions. Based on the complaint of the clients, the petition alleged that the respondent violated Rules 1.3, Diligence,[2] 1.4, Communication,[3] 1.16(a), Declining or Terminating

---

1. Until July 1, 2001, Maryland Rule 16–709, as relevant, provided:
 "a. Who may file. Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."
 Adopted November 30, 2000, effective July 1, 2001, Maryland Rule 16–741 now governs the filing of statements of charges. It provides:
 "(a) Filing of Statement of Charges.
 "(1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:
 "(A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;
 "(B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;
 "(C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and
 "(D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."

2. Pursuant to Maryland Rule 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

3. Maryland Rule 1.4 requires a lawyer to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

Representation,[4] 3.2, Expediting Litigation,[5] 8.1(b), Bar Admission and Disciplinary Matters,[6] and 8.4(d), Misconduct.[7] He was charged, in connection with the reciprocal proceedings, with virtually the same violations that the Supreme Court of Delaware sustained,[8] i.e, Rules 1.2(a), Scope of Representation,[9] 1.3, 1.15, Safekeeping

---

4. Maryland Rule 1.16(a) provides:

"(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

"(1) the representation will result in violation of the rules of professional conduct or other law;

"(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

"(3) the lawyer is discharged."

5. Under Maryland Rule 3.2, "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

6. Maryland Rule 8.1(b) provides:

"An applicant for admission to or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

" * * * *

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6 [pertaining to the confidentiality of information]."

7. Rule 8.4(d) provides that "[i]t is professional misconduct for a lawyer to:

"(d) engage in conduct that is prejudicial to the administration of justice."

8. The one exception related to Maryland Rule 1.15. The Supreme Court of Delaware found a violation of subsections (a), (b) and (d) of that Rule. The Petition For Disciplinary Action filed against the respondent by Bar Counsel did not charge a violation of subsection (d).

9. (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c) [pertaining to client consent], (d) [pertaining to criminal or fraudulent conduct], and (e) [pertaining to assistance not permitted by the Rules of Professional Conduct], and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.

Property,[10] 1.16(d), 3.4, Fairness to Opposing Party and Counsel,[11] 8.1(b), and 8.4(d).

We referred the case to the Honorable Thomas E. Noel, of the Circuit Court for Baltimore City, for hearing.[12] *See* 16–711.a.[13] Following the hearing, the hearing court made findings of fact, as follows:

----

> In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

10. Maryland Rule 1.15, as relevant, provides:
 "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
 "(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

11. Maryland Rule 3.4(c) admonishes a lawyer not to "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

12. Personal service could not be obtained on the respondent. Consequently, upon motion of the petitioner, the Court, pursuant to Maryland Rule 16–709(d), authorized service by delivery of the Court's order and the pleadings on the Treasurer of the Client's Security Trust Fund. When the respondent did not file a timely answer after the petitioner filed its affidavit of service and the Treasurer of the Clients' Security Trust Fund filed a certificate of compliance, the hearing court entered an order of default, which was mailed to the respondent's last known address. The respondent did not move, and to date has not moved, to vacate the order.

13. Maryland Rule 16–711.a provides:
 "a. Findings. A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."
 See Rule 16–757, effective July 1, 2001.

"BC Docket No. 2000–472–00–3

Complaint of Jane and Wayne Nock

"On or about June 24, 1999, the Respondent filed a civil action in the Circuit court for Baltimore City on behalf of his clients, Jane C. and Wayne E. Nock (hereafter "the Nocks"). The Nocks, residents of Delaware, were suing Walker L. Robinson, M.D. Dr. Robinson practiced medicine in Baltimore, Maryland. On or about December 8, 1999, Dr. Robinson filed an Answer to the Complaint. Thereafter, the Respondent failed to pursue the litigation on behalf of the Nocks.

"The Respondent failed to comply with the Circuit Court's Scheduling Order with regard to the designation of expert witnesses and failed to communicate with the Nocks concerning the status of their litigation. The Respondent abandoned the Nocks without explanation or advice, failed to notify the Nocks of his decertification by the Court of Appeals on April 12, 2000,[11] failed to withdraw his appearance and failed to appear at hearings set by the Circuit Court for Baltimore City.

\* \* \* \*

"BC Docket No. 2001–269–00–3

Complaint of Bar Counsel

"By Opinion and Order of the Supreme Court of the State of Delaware dated January 17, 2001, Respondent was found to have violated the Delaware Lawyers' Rules of Professional Conduct (DLRPC), specifically, DLRPC 1.2(a), failing to abide by a client's decision, DLRPC 1.3, failing to act with diligence and promptness in representing a client, DLRPC 1.15(a), commingling funds, DLRPC 1.15(b), failing to promptly deliver funds to a client upon request, DLRPC 1.15(d), failing to maintain proper books and records, DLRPC 1.16(d), failing to take reasonable steps to protect a client's interest upon termi-

---

14. The respondent was decertified, pursuant to Maryland Rule 16 811.g, for failure to pay annual assessments to the Clients' Security Trust Fund.

nation of representation, DLRPC 3.4(c), knowingly disobeying the Court of Chancery's Order to cooperate with the Receivers and knowingly refusing to fulfill his annual registration obligations, DLRPC 8.1(b), willfully failing to respond to the office of Disciplinary Counsel's request for information, and DLRPC 8.4(d), engaging in conduct that was prejudicial to the administration of justice.

"The facts underlying the findings of the Delaware Court are as follows. On or about July 1998, the Respondent began giving Jane Nock advice with regard to her business, Delaware Heritage Basket Company (hereafter "DHB"). In return for his legal services, Ms. Nock offered to give the Respondent twenty-five percent (25%) of the business. In August 1998, Ms. Nock's business checking account was closed by her bank due to a series of checks having been written with insufficient funds. Respondent allowed checks and deposits relating to DHB to be processed through one of his bank accounts. Client funds were commingled with the Respondent's own funds and transactions.

"In September 1998, Ms. Nock's financial difficulties became acute as the police seized her records and her arrest was imminent. She apparently had a falling out with Respondent and retained new counsel, John Sandy. Mr. Sandy then sought return from Respondent of all funds being held in his possession on behalf of Ms. Nock.

"Although Respondent recognized that he owed Ms. Nock money in December 1998, the Respondent did not pay these funds until June 1999 when the Delaware Office of Disciplinary Counsel instructed him to do so. Because Respondent did not maintain adequate records relating to Ms. Nock's business, the amount that Respondent calculated he owed Ms. Nock could not be substantiated.

"In another matter, the Respondent represented Joseph Mascelli during the period November 1997 to April 1999 in the matter of a judgment entered against Mr. Mascelli in connection with a debt on a lease of commercial real estate. Respondent failed to carry out his client's instructions to resolve the

matter and, as a result, subjected his client to actions by the sheriff against his assets. Respondent failed to return promptly the seven hundred fifty dollar ($750) retainer paid by Mr. Mascelli.

"The Respondent failed to respond in a timely manner to requests by the Delaware Office of Disciplinary Counsel with regard to both the Nock and the Mascelli matters and failed to provide the Supreme Court of Delaware with the required 1999 annual registration statement or to pay the required registration assessment. On July 13, 1999, the Supreme Court held a hearing on a rule to show cause why the Respondent should not be suspended from practice. The Respondent failed to appear and the Supreme Court of Delaware issued an Order suspending Respondent indefinitely.

"Thereafter, Respondent failed to communicate with the Office of Disciplinary Counsel and, on July 16, 1999, two Receivers were appointed by the Court of Chancery. The Order specifically obliged Respondent to cooperate with and assist the Receivers in notifying and protecting the interests of his clients. Respondent failed to cooperate with or assist the Receivers, failed to respond to repeated attempts by the Receivers to communicate with him about receivership matters, failed to promptly provide the Receivers, upon their repeated requests, with his active client files and related information about pending client matters or with certain accounting records for his law practice, and failed to provide the Receivers with access to his law office so that the Receivers could readily obtain client files and other information needed to carry out their obligations pursuant to the Court of Chancery's Order. Respondent also failed to assist the Receivers in their efforts to deal with his non-compliant real estate escrow account.

"The Respondent's conduct resulted in a great burden to the Receivers and was prejudicial to the interests of his clients, many of whom were in bankruptcy, in their active legal matters. The Respondent's lack of cooperation and failure to

turn over account ledgers made it difficult for the Receivers to make a determination as to refunds owed to clients."

On these findings, the hearing court concluded, as to the Nocks' complaint, that the respondent violated each of the rules charged, except 1.16 and 8.1, as to which it made no findings at all. As, to Bar Counsel's complaint, noting that, pursuant to Maryland Rule 16–710.e, a final adjudication in a disciplinary proceeding by a judicial tribunal as to an attorney's guilt of misconduct is conclusive proof of that misconduct, and thus clear and convincing evidence of its commission, the hearing court concluded that the respondent violated the Maryland Rules corresponding to those that the Delaware Supreme Court had determined that the respondent had violated.

No exceptions have been taken to the hearing court's findings of fact and conclusions of law. The petitioner has, however, recommended a sanction, that the respondent be disbarred. This sanction is justified, the petitioner submits, by the findings of the hearing court in the Nocks' matter, as well as by the findings of the Delaware Supreme Court in the reciprocal discipline case. In addition, the petitioner informs us that the respondent has a prior history of disciplinary action, this Court, in 1998, having previously reprimanded the respondent, who consented to that sanction after he had been found by the Supreme Court of Delaware to have violated that State's counterparts of Maryland Rules 1.3, 1.4 and 8.4(a)[15] and (d).

 The findings of fact made by the hearing court are reviewed to determine if they are based on clear and convincing evidence, *Attorney Griev. Comm'n v. Powell*, 328 Md. 276, 287, 614 A.2d 102, 108 (1992); *Attorney Griev. Comm'n v. Clements*, 319 Md. 289, 298, 572 A.2d 174, 179 (1990). Indeed, the "hearing court's findings of fact are prima facie correct

---

**15.** Maryland Rule 8.4(a) prohibits a lawyer from "violat[ing] or attempt[ing] to violate the Rules of Professional Conduct, [or] knowingly assist[ing] or induc[ing] another to do so, or do so through acts of another."

and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Griev. Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Griev. Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)). Moreover, in reciprocal discipline cases, as the hearing court noted, "[a] final adjudication in a disciplinary proceeding by a judicial tribunal ... that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule." Rule 16–710(e). *See Attorney Griev. Comm'n of Md. v. Richardson,* 350 Md. 354, 365–66, 712 A.2d 525, 530–31 (1998); *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 324, 697 A.2d 83, 87 (1997); *Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 221–22, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Saul,* 337 Md. 258, 267–68, 653 A.2d 430, 434 (1995); *Attorney Griev. Comm'n v. Hopp,* 330 Md. 177, 185–86, 623 A.2d 193, 197 (1993); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 425–26, 550 A.2d 1150, 1152 (1987); *Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142–43, 527 A.2d 325, 330 (1987); *Attorney Griev. Comm'n v. Haupt,* 306 Md. 612, 614–15, 510 A.2d 590, 591–92 (1986); *Attorney Griev. Comm'n v. Bettis,* 305 Md. 452, 455, 505 A.2d 492, 493 (1986); *Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 171, 482 A.2d 497, 498 (1984); *Attorney Griev. Comm'n v. Rosen,* 301 Md. 37, 39, 481 A.2d 799, 800 (1984). There is sufficient evidence to support the hearing court's findings with respect to the Nocks' matter. Consequently, those findings are not clearly erroneous. In addition, that the respondent was found, by the Supreme Court of Delaware, to have engaged in misconduct conclusively establishes that he engaged in that misconduct.

This brings us to the determination of the appropriate sanction to be imposed. To be sure, the Nocks' complaint is not a reciprocal discipline matter and is separate from the reciprocal discipline complaint. Nevertheless, we will address the latter first because the Delaware Supreme Court imposed the ultimate sanction of disbarment and if we, as we often do, impose the same sanction, there will be no need further to

consider another sanction for the misconduct in which the respondent engaged in the Nocks' matter.

This Court has often imposed sanctions, in reciprocal discipline cases, of facially equal severity to those imposed by a sister state, *see, e.g., Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 83, 710 A.2d 926, 934 (1998); *Richardson,* 350 Md. at 365–66, 712 A.2d at 530–31; *Gittens,* 346 Md. at 324, 697 A.2d at 87; *Bettis,* 305 Md. 452, 505 A.2d 492; *Moore,* 301 Md. 169, 482 A.2d 497; *Attorney Griev. Comm'n v. James,* 300 Md. 297, 305–06, 477 A.2d 1185, 1189 (1984); *Attorney Griev. Comm'n v. Hines,* 304 Md. 625, 500 A.2d 646 (1985); *Rosen,* 301 Md. 37, 481 A.2d 799. We have pointed out, however, that there is no requirement that this should be done, that we need not impose the same sanction as that imposed by the jurisdiction in which the misconduct occurred. *See Gittens,* 346 Md. at 324, 697 A.2d at 87. In fact, we have instructed that this Court is duty-bound to assess for itself the propriety of the sanction imposed by the other jurisdiction and that recommended by the petitioner. *Gittens,* 346 Md. at 326, 697 A.2d at 88. Indeed,

> "When the Court considers the appropriate sanction in a case of reciprocal discipline, we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct."

*Willcher,* 340 Md. at 222, 665 A.2d at 1061 (1995) (quoting *Parsons,* 310 Md. at 142, 527 A.2d at 330). We have deferred to the action taken by the jurisdiction in which the misconduct occurred where the purpose of attorney discipline is the same in both jurisdictions. *Gittens,* 346 Md. at 327, 697 A.2d at 88. In any event, the burden is on the respondent to demonstrate—in Maryland, the burden of establishing factual matters in defense must be carried by a "preponderance of the evidence," *Powell,* 328 Md. at 288, 614 A.2d at 109; *Attorney Griev. Comm'n v. Bakas,* 322 Md. 603, 605, 589 A.2d 52, 53 (1991)—that less severe discipline than that imposed in the

other jurisdiction, or no discipline, should be imposed in this State. *People v. Calder*, 897 P.2d 831, 832 (Colo.1995); *The Florida Bar v. Friedman*, 646 So.2d 188, 190 (Fla.1994).

In the reciprocal discipline case, the misconduct occurred in Delaware. There is nothing in the record to indicate that the purpose of attorney discipline in Delaware differs from that in Maryland. Indeed, Delaware authority demonstrates that it is, in fact, the same. *See In re Kevin M. Howard*, 765 A.2d 39, 45 (Del.2000) ("The goals of lawyer discipline are to protect the public, to protect the administration of justice, and to preserve confidence in the legal profession.... Furthermore, the punishment imposed by the Court also must deter other lawyers from similar misconduct.) (Footnote omitted). *See also In re Figliola*, 652 A.2d 1071, 1076 (Del.1995). And the respondent, who, as we have seen, did not appear in these proceedings, has not shown by a preponderance of the evidence that a less severe sanction should be imposed in these proceedings than that imposed in the proceedings in the State of Delaware. Considering the particular facts and circumstances of this reciprocal discipline case, with a view toward consistent dispositions in such cases, as we must, including the seriousness of the misconduct found to have been engaged in, we conclude that deferring to the jurisdiction where the misconduct occurred is appropriate in this case and that the appropriate sanction in this case is that imposed by the Supreme Court of Delaware, namely disbarment.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST THOMAS V. MCCOY.