## In re Andrew M. STEINBERG, Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 03–BG–801.**

District of Columbia Court of Appeals.

Argued Oct. 28, 2004.
Decided Dec. 30, 2004.

Traci M. Tait, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, with whom Lisa A. Everhart, Assistant Executive Attorney, was on the brief, for the Board on Professional Responsibility.

Before SCHWELB and FARRELL, Associate Judges, and NEWMAN, Senior Judge.

PER CURIAM:

On September 18, 2002, Bar Counsel charged Andrew M. Steinberg, a member of our Bar, with violating the following Rules of Professional Conduct:

Rule 8.4(d), by engaging in conduct that seriously interfered with the administration of justice;

Rule 8.1(b), by failing to respond reasonably to a lawful demand for information from a disciplinary authority, namely, the Office of Bar Counsel; and

Rule XI, § 2(b)(3), by failing to comply with an order of the Board on Professional Responsibility issued in connection with disciplinary proceedings.

On February 25, 2003, following an evidentiary hearing, an Ad Hoc Hearing Committee found by clear and convincing evidence that Steinberg had violated each of these rules. The Hearing Committee recommended that Steinberg be suspended from practice for thirty days and that he be required to demonstrate fitness to practice as a condition of reinstatement. A copy of the Hearing Committee's Report and Recommendation is attached hereto and made a part of this opinion.

Steinberg excepted to the Hearing Committee's recommendation, contending that he had ultimately cooperated with Bar Counsel and had acted in good faith. Steinberg further asserted that the disci-

pline imposed by the court for his prior violations, *see In re Steinberg,* 720 A.2d 900 (D.C.1998) (per curiam) (*Steinberg I* ), and *In re Steinberg,* 761 A.2d 279 (D.C. 2000) (per curiam) (*Steinberg II* ), had been too severe, and that the sanction recommended by the Committee in this case was likewise excessive.

On July 30, 2003, the Board on Professional Responsibility issued its Report and Recommendation. The Board adopted most of the Hearing Committee's proposed findings, but disagreed with the Committee with respect to the appropriate sanction. Specifically, the Board proposed that Steinberg be suspended from practice for sixty days, but declined to recommend that he be required to demonstrate fitness as a condition of reinstatement.

■ Bar Counsel filed an exception to the Board's recommendation, contending that a "fitness" requirement should have been imposed.[1] We are required to accord the Board's recommendation substantial deference, *see* D.C. Bar R. XI, § 9(g)(1), but "[i]n the final analysis, the responsibility to discipline lawyers is the court's. The buck stops here." *In re Shillaire,* 549 A.2d 336, 342 (D.C.1988). In our judgment, the issues raised in this case were correctly analyzed by the Hearing Committee, and we adopt the Committee's Report and Recommendation. We note, in particular, that in *Steinberg II,* which involved violations very similar to those in the present case, a different Hearing Committee had also proposed that Steinberg be required to demonstrate fitness, but the Board had recommended that no such re-

quirement be imposed. This court adopted the Board's recommendation, but emphasized that

> attorneys cannot be allowed to willfully ignore and frustrate the efforts of Bar Counsel and the Board to obtain responses to charges of serious ethical misconduct. Attorneys must know that if they choose this course of action, the consequences will be severe.

760 A.2d at 280.

■ We agree entirely with the Hearing Committee's discussion of the appropriate sanction. As the Committee aptly noted in this case, "[i]n light of Respondent's repeated failures, the consequences should now be more severe." Given Steinberg's disciplinary history, and, in particular, his disregard of the quoted warning in *Steinberg II* and his repetition of his misconduct in that case, we do not believe that a sixty-day suspension, without a requirement of proof of fitness, can reasonably be reconciled with that clear warning.

Accordingly, Steinberg is hereby suspended from the practice of law for thirty days, and reinstatement shall be conditioned on proof of fitness to practice law."[2] We once again direct Steinberg's attention to the requirements of D.C. Bar R. XI, § 14, which set forth the responsibilities of suspended attorneys, and to the consequences of noncompliance with these requirements, as set forth in D.C. Bar R. XI, § 16. *See Steinberg I,* 720 A.2d at 901–02; *Steinberg II,* 761 A.2d at 280.

*So ordered.*[3]

1. We note that Steinberg did not file a brief in this court or otherwise participate in the proceedings before us.

2. In the event that Steinberg applies for reinstatement, the Board may, of course, focus its inquiry on those aspects of the practice of law

in which Steinberg's lack of fitness has been demonstrated.

3. In declining to recommend that Steinberg be required to demonstrate fitness, the Board applied the standards that it articulated in *In re Cater,* Bar Docket Nos. 337–99 *et al.:*

APPENDIX

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY AD HOC HEARING COMMITTEE

In the Matter of: Andrew M. Steinberg, Respondent.

Bar Docket No. 423-01

*REPORT AND RECOMMENDATION*

Before the Ad Hoc Hearing Committee are Bar Counsel's charges that Respondent failed to (1) answer investigative inquiries by Bar Counsel, and (2) respond to an order of the Board on Professional Responsibility (the "Board"). Specifically, Respondent is charged with violating the following Rules of Professional Conduct and Rule of the Court of Appeals Governing the Bar:

- Rule 8.4(d), by engaging in conduct that seriously interfered with the administration of justice;

- Rule 8.1(b), by failing to respond reasonably to a lawful demand for information from a disciplinary authority; and

- Rule XI, § 2(b)(3), by failing to comply with an order of the Board issued in connection with disciplinary proceedings.

"In *Cater,* the Board suggested that three factors be examined to determine whether serious doubt about Respondent's fitness exists in a failure to cooperate proceeding where the alleged underlying misconduct has yet to be adjudicated: (i) Respondent's level of cooperation in this proceeding; (ii) the repetitive nature of Respondent's lack of cooperation in disciplinary proceedings; and (iii) other evidence that may reflect on Respondent's fitness. We express no opinion as to the appropriateness of the *Cater* standard, for we would impose the fitness requirement whether we were applying *Cater* or our own earlier case law on the issue. *See In re Chisholm,* 679 A.2d 495,

*Procedural History*

On September 18, 2002, Bar Counsel filed with the Board her Specification of Charges and Petition Instituting Formal Disciplinary Proceedings in this matter. BX B.[1] These documents were personally served on Respondent on November 1, 2002. BX D. Respondent failed to file an answer by November 21, 2002, as required by Board Rule 7.5.

The parties attended a pre-hearing conference with the Committee Chair on December 6, 2002.[2] At the conference, Respondent requested permission to late-file his answer; he was directed to so move in writing. *See* Order of December 9, 2002. On December 10, 2002, Respondent moved in writing to late-file an answer. Given reasons of mistake and inadvertence cited by Respondent at the pre-hearing conference and Bar Counsel's explicit lack of objection to the late-filing, Respondent's motion was granted and his Answer to Charges, accompanied by proposed exhibits, was accepted for filing. *See* Order of December 12, 2002.

This matter was heard on December 20, 2002. At the hearing, written stipulations were presented to the Committee. Tr. at 6–7. The stipulations were filed with the Board on Professional Responsibility on

503 (D.C.1996); *In re Steele,* 630 A.2d 196, 201 (D.C.1993).

1. Bar Counsel's exhibits will be referred to as "BX." Respondent's exhibits will be referred to as "RX." The stipulation of the parties will be referred to as "Stip." The transcript of the hearing will be referred to as "Tr."

2. A second pre-hearing conference was held at Bar Counsel's request on December 17, 2002. At that hearing, the parties and the Chair discussed the availability of certain witnesses. This conference did not substantively impact the hearing as all desired witnesses were called.

the date of the hearing and included with Bar Counsel's exhibits as BX 8. Relying on the stipulations and her proposed documentary evidence, Bar Counsel did not call any witnesses in her case-in-chief. Tr. at 10. Bar Counsel's Exhibits A–D and 1–8 were received in evidence without objection. Tr. at 12–13. Respondent, appearing *pro se*, testified on his own behalf. Tr. at 14–51. Respondent offered Exhibits 1 and 2 into evidence, and such were received without objection.[3] Tr. at 69–70.

Bar Counsel called Michael Bozeman, an investigator with the Office of Bar Counsel, as a rebuttal witness. Tr. at 53–67.

At the conclusion of the hearing, the Committee announced is preliminary, nonbinding determination that Bar Counsel had presented evidence sufficient to permit a finding of a violation of at least one of the alleged charges. Tr. at 68. Bar Counsel offered evidence of prior discipline in aggravation of the charges, and Bar Counsel's exhibits to this effect were received in evidence. BX 9–12; Tr. at 72. Respondent asked the Committee to consider in mitigation the health of Respondent's former spouse and his resulting responsibilities. Tr. at 27, 70–71.

Following the hearing, the Committee Chair requested post-hearing briefs filed according to the briefing schedule prescribed by Board Rule 12.1.[4] Tr. at 73. Bar Counsel timely filed Proposed Findings of Fact, Conclusions of Law, and Recommendation as to Sanction on January 21, 2003.[5] Respondent did not timely file a post-hearing brief by the February 3, 2003, due date or at any time thereafter.

Upon consideration of all of the evidence and Bar Counsel's post-hearing submissions, the Hearing Committee finds that Respondent violated Rules 8.4(d) and 8.1(b) of the Rules of Professional Conduct, and Rule XI, § 2(b)(3), of the Rules of the Court of Appeals Governing the Bar. With respect to sanction, Bar Counsel asks that we recommend that Respondent be suspended for 30 days and required to show fitness to practice law prior to reinstatement.[6] For the reasons stated below, the Committee recommends that Respondent be suspended for 30 days and required to demonstrate fitness to practice law prior to reinstatement.

## PROPOSED FINDINGS OF FACT

### Background

1. Respondent is a member of the District of Columbia Bar, having been admitted on June 19, 1981, and assigned Bar number 350983. Stip. ¶ 1;[7] BX A.

---

3. On December 13, 2002, Bar Counsel served by mail its Objection to Respondent's Exhibit, which exhibit specifically constituted·an unsigned affidavit. This objection was not received by the Chair of the Hearing Committee until December 26, 2002, and therefore was not acted upon prior to the hearing. However, given Respondent's representations during the second pre-hearing conference that he would not introduce this exhibit at the hearing, Bar Counsel's request was made moot.

4. Post-hearings briefs were originally requested at the pre-hearing conference on December 6, 2002.

5. Bar Counsel's post-hearing submission will be referred to herein as "Brief of Bar Counsel."

6. Brief of Bar Counsel at 20–21.

7. Although Respondent at times says that he cannot recall facts to which he has stipulated (*see, e.g.,* Tr. at 15–16, 28), he did voluntarily sign the stipulation and admit to Bar Counsel's allegations. Tr. at 11, 16. The Committee notes that there is no evidence on the record refuting the substance of the stipulation and it accepts the stipulation as fact.

2. Respondent has lived at 7767 Astrella Court, Springfield, Virginia 22152, since June 1, 1998, and this address is provided by Respondent to the District of Columbia Bar. Tr. at 14, 50.

3. A disciplinary complaint against Respondent by Terry Jodrie, M.D., was docketed as Bar Docket Number 423–01 on or about December 12, 2001. Stip. ¶ 2; BX 1.

*First Request for Response to Complaint*

4. On January 4, 2002, Bar Counsel mailed the complaint to Respondent with a request that he respond to the allegations of misconduct by January 14, 2002. Stip. ¶ 2; BX 1.

5. This letter constituted a legitimate inquiry by Bar Counsel and a lawful demand for information from a disciplinary authority.[8]

6. The letter of January 4, 2002, was mailed to Respondent at 7767 Astrella Court, Springfield, Virginia. Stip. ¶ 2; BX 1.

7. The January 4 letter warned that failure to respond has been held to violate the Rules of Professional Conduct. BX 1.

8. Respondent failed to respond to Bar Counsel's letter of January 4, 2002. Stip. ¶ 2; BX 2.

*Second Request for Response to Complaint*

9. On January 28, 2002, Bar Counsel wrote to Respondent setting forth

Respondent's obligation to respond to the complaint, along with a subpoena *duces tecum.* Stip. ¶ 2; BX 2.[9]

10. This letter constituted a legitimate inquiry by Bar Counsel and a lawful demand for information from a disciplinary authority.[10]

11. The letter of January 28, 2002, was mailed to Respondent at 7767 Astrella Court, Springfield, Virginia. Stip. ¶ 2; BX 1.

12. The January 28 letter warned that disciplinary charges could be brought if Respondent failed to respond. BX 2.

13. Respondent failed to respond to Bar Counsel's letter of January 28, 2002. Stip. ¶ 2; BX 2.

*Third Request for Response to Complaint*

14. On February 13, 2002, Bar Counsel investigator Michael Bozeman personally served Respondent with a copy of Bar Counsel's letter of January 28, 2002. Stip. ¶ 3; BX 3; Tr. at 15–16, 54, 56.

15. This letter constituted a legitimate inquiry by Bar Counsel and a lawful demand for information from a disciplinary authority.[11]

16. Respondent's answer was due no later than February 23, 2002,[12] but he again failed to respond to Bar Counsel. Stip. ¶ 3; BX 4; Tr. at 46–47.

---

8. D.C. Court of Appeals Rule XI, § 8(a), provides: "All investigations, whether upon complaint or otherwise, shall be conducted by Bar Counsel."

9. Bar Counsel's letter states in its reference line that a response is due within 10 days; however, it states in its body that an answer is due within five days. BX 2. In either case,

Respondent failed to timely respond to the letter.

10. *See* fn. 8, *supra.*

11. *Id.*

12. *See* fn. 9, *supra.*

 

*Respondent's Former Spouse is Injured*

17. On or about February 28, 2002, Respondent's former spouse, Lee Barclay, was seriously injured in an automobile accident. Tr. at 16, 29.

18. From the date of the accident until approximately the end of April 2002, Respondent lived at Ms. Barclay's home in Fairfax Station, Virginia, caring for Ms. Barclay and their two young children. Tr. at 17–19, 24.

19. Ms. Barclay's home is approximately 15–minutes by car from Respondent's home in Springfield, Virginia. Tr. at 26.

20. While living at Ms. Barclay's home, Respondent often spent time working in his home office in Springfield, Virginia. Tr. at 17–18, 26, 32–33.

*Fourth Request for Response to Complaint*

21. On March 19, 2002, Bar Counsel filed with the Board on Professional Responsibility (the "Board") a motion to compel Respondent's response to the ethical complaint. Stip. ¶ 4; BX 4.

22. Bar Counsel served a copy of said motion upon Respondent by mail.

The motion included as attachments all of Bar Counsel's correspondence previously sent, as well as another copy of the ethical complaint. Stip. ¶ 4.

23. On April 5, 2002, the Board granted Bar Counsel's motion and ordered Respondent to respond to the ethical complaint within 10 days of the date of the Order. Stip. ¶ 5; BX 5.

24. The Board mailed its Order of April 5, 2002, to Respondent at 7767 Astrella Court, Springfield, Virginia 22512. Stip. ¶ 5.

25. The April 5 Order warned Respondent that disciplinary charges could result from a failure to respond. BX 5.

26. Respondent received the mailed Order and failed to respond. Stip. ¶ 5; Answer ¶ 6; Tr. at 19.[13]

*Fifth Request for Response to Complaint*

27. On May 1, 2002, Bar Counsel investigator Michael Bozeman personally served Respondent with a copy of the Board's Order of April 5, 2002. Stip. ¶ 6; BX 6; Tr. at 57.

28. After personally receiving service of the Board's Order, Respondent ignored the Order and Bar Coun-

---

**13.** Respondent claims that on April 18, 2002, he prepared a response as ordered by the Board, but that he inadvertently failed to mail it. RX 2; Tr. at 19–21, 23, 37. This claim is inconsistent with his Answer in which he maintains his purported belief that a "copy" of his response was sent. Answer ¶ 7. Respondent's credibility is questionable. The Committee first does not understand why a *copy* of a letter, and not an original, would be sent, and it is troubled by Respondent's inconsistencies.

Respondent's representations are also contrary to Mr. Bozeman's credible testimony. Respondent claims that he told Mr. Bozeman

on May 1, 2002, that he had already responded to the complaint. Tr. at 50. Mr. Bozeman flatly denies this claim. Tr. at 64–65, 67. Respondent further claims that he was not contacted by Mr. Bozeman after April and before October 2002. Tr. at 20. Mr. Bozeman's testimony, drawn from information contained in contemporaneous notes, is to the contrary. Tr. at 58–60. However, an express finding of fact with regard to Respondent's credibility is not necessary. Even if his contentions are accepted as truth, he inexcusably failed to respond to Bar Counsel's inquiries and the Board's Order. This fact is clearly and convincingly proved by Bar Counsel.

sel's request for information. Tr. at 36–37.

29. On November 1, 2002, approximately 6–months late, Respondent responded to the Board's Order by hand-delivering to the Board a letter dated October 28, 2002. RX 1, 2; BX 7; Tr. at 21.

30. On the date that Respondent filed his response to the Board's Order compelling a response to the underlying ethical complaint, he was served with Bar Counsel's Specification of Charges in the instant failure to cooperate matter. BX D.[14]

*Other Attempts to Communicate with Respondent*

31. During the time that he lived at Ms. Barclay's residence, Respondent checked messages left on his office and cellular telephones. Tr. at 35.

32. Mr. Bozeman contacted—and unsuccessfully attempted to contact—Respondent on numerous occasions, both in person and by telephone, prior to effecting personal service of the specification of charges. Tr. at 54–63.[15]

33. Several telephone messages from Mr. Bozeman to Respondent went unanswered. Tr. at 57–58, 61–62.

34. At times, Respondent could not be reached by telephone because his telephone numbers had been disconnected. Tr. at 60–61.

35. On October 28, 2002, notwithstanding that Respondent and Mr. Bozeman agreed to meet, Respondent failed to meet Mr. Bozeman to receive service of the Specification of Charges. Tr. at 20, 62–63.

36. Respondent admits that he should have responded in a more timely manner. Tr. at 28, 47.

*Aggravating Circumstances*

37. On November 9, 1984, Bar Counsel informally admonished Respondent for improperly disbursing settlement funds. BX 12.

38. On November 30, 1998, the D.C. Court of Appeals ("the Court") ordered that Respondent be suspended for 30 days as reciprocal discipline due to misconduct in Virginia, which conduct involved dishonesty and mishandling of client funds. BX 10.

39. On November 2, 2000, the Court ordered that Respondent be suspended for 30 days for failing to cooperate with an investigation by Bar Counsel. BX 9.

---

**14.** The specification of charges was personally served on Respondent by Mr. Bozeman at 500 Indiana Avenue, N.W., at approximately 9:25 a.m. on November 1, 2002. BX D. Respondent claims that he filed his response to the complaint by hand at the Board Office earlier that day, probably at around 9:00 a.m. Tr. at 22, 43; Answer ¶ 10. Notwithstanding the fact that he was in the same building as the Office of Bar Counsel, he did not deliver a copy of his response to that office. Tr. at 43. Although it seems clear that Respondent was attempting to file his response to the underlying disciplinary complaint before being served with Bar Counsel's specification of charges for failure to cooperate, the timing of this response is immaterial to the fact that his response was extremely and inexcusably late.

**15.** In testifying with regard to his contact with Respondent, Mr. Bozeman referred to notes taken contemporaneously with the times in question. Tr. at 59. Respondent admits having several conversations with Mr. Bozeman, but he claims not to remember when those conversations occurred. Tr. at 38, 41.

40. On March 26, 2001, Bar Counsel informally admonished Respondent for failing to comply promptly with a client's reasonable requests for information. BX 11.

## PROPOSED CONCLUSIONS OF LAW

### A. *Rule 8.4(d)*

Bar Counsel charges that Respondent violated Rule 8.4(d) of the Rules of Professional Conduct by failing to cooperate with Bar Counsel in a disciplinary investigation. Rule 8.4(d) states:

> It is professional misconduct for a lawyer to engage in conduct that seriously interferes with the administration of justice.

A lawyer's failure to comply with Bar Counsel's requests and the Board's demands during a disciplinary investigation are sanctionable under Rule 8.4(d). Comment 3 to the Rule warns that "[a] lawyer's failure to respond to Bar Counsel's inquiries ... may constitute misconduct." *See, e.g., In re Beller*, 802 A.2d 340 (D.C. 2002); *In re Beaman*, 775 A.2d 1063 (D.C. 2001); *In re Giles*, 741 A.2d 1062 (D.C. 1999); *In re Wright*, 702 A.2d 1251, 1255–56 (D.C.1997); *In re Delaney*, 697 A.2d 1212, 1213–14 (D.C.1997); *In re Lilly*, 699 A.2d 1135 (D.C.1997); *In re Lockie*, 649 A.2d 546 (D.C.1994); *In re Smith*, 649 A.2d 299, 300 (D.C.1994). This is nothing new to Respondent. *See In re Steinberg*, 761 A.2d 279, 280–81 (D.C.2000).

Respondent admittedly failed to respond to two letters from Bar Counsel (served on him a total of three times) and an Order of the Board (served on him twice) in connection with this matter. In total, for nearly ten months, Respondent failed to respond to these inquiries and demands although they expressly warned that he could be charged with a disciplinary violation for failing to cooperate. The Committee finds that this conduct interfered with the expeditious resolution of the allegations against Respondent and was prejudicial to the administration of justice. Respondent's chronic indifference to Bar Counsel's inquiries constitutes a pervasive violation of Rule 8.4(d).

### B. *Rule 8.1(b)*

Bar Counsel charges that Respondent violated Rule 8.1(b) of the Rules of Professional Conduct by failing to respond to lawful demands for information from a disciplinary authority. Rule 8.1(b) provides in relevant part:

> [A] lawyer ... in connection with a disciplinary matter ... shall not ... knowingly fail to respond reasonably to a lawful demand for information from ... a disciplinary authority.

"Rule 8.1(b) specifically addresses the requirement of responding to Bar Counsel as opposed to the more general requirements of Rule 8.4(d)." *In re Rivlin*, Bar Docket Nos. 436–96 *et al.* (BPR Oct. 28, 2002), at 41, n. 20; *see also Beller*, 802 A.2d at 340 (finding violation of Rule 8.1(b)). A reading of the plain language of this rule demonstrates Respondent's violation. Bar Counsel on three occasions and the Board on two occasions sought responses from Respondent. On each occasion, without excuse, Respondent failed to respond. Although Respondent eventually submitted an answer to the ethics complaint underlying this matter, he did so approximately six months after the Board's Order was served on him for the second time and after formal disciplinary proceedings based on his failure to cooperate had been commenced. Accordingly, the Committee finds that Respondent's repeated failures to respond to lawful demands for information from disciplinary authorities constitute a clear violation of Rule 8.1(b).

*Rule XI, § 2(b)(3)*

Bar Counsel charges that Respondent violated Rule XI, § 2(b)(3), of the Rules of the Court of Appeals Governing the Bar by failing to comply with an order of the Board. R. XI, § 2(b)(3), provides:

> Acts or omissions by an attorney ... which violate ... the rules or code of professional conduct currently in effect in the District of Columbia shall constitute misconduct and shall be grounds for discipline.... Any of the following shall also be grounds for discipline: ... Failure to comply with any order of the Court or the Board issued pursuant to this rule.

It is well established that failure to comply with the Board's orders constitutes misconduct. *See, e.g., Beaman,* 775 A.2d at 1063; *Giles,* 741 A.2d at 1062; *Delaney,* 697 A.2d at 1213–14; *Smith,* 649 A.2d at 300. Again, this is not new to Respondent. *See Steinberg,* 761 A.2d at 280–81.

Respondent repeatedly failed to respond to Bar Counsel, prompting Bar Counsel to request that the Board compel his response.[16] The Board, pursuant to D.C. Bar R. XI, §§ 2(b)(3) and 8(a), ordered Respondent, by April 15, 2002, to respond to Bar Counsel's written inquiries concerning the underlying complaint. The Board warned Respondent that failure to comply with its Order could constitute grounds for discipline. Respondent twice was served with the Order, once by mail and once in person. Nevertheless, Respondent disregarded the Board's order for approximately six months before filing a response on November 1, 2002, after he had been charged in this case. Based on clear and convincing evidence, the Committee finds that Respondent's failure to comply with the Board's Order constitutes a violation of D.C. Bar R. XI, § 2(b)(3).

## PROPOSED RECOMMENDATION AS TO SANCTION

The Committee finds, based on clear and convincing evidence, that Respondent violated Rules 8.4(d), 8.1(b), and Rule XI, § 2(b)(3), by failing to cooperate with Bar Counsel and to comply with an Order of the Board issued in connection with the investigation of the ethics complaint underlying this matter. Bar Counsel asks that the Committee recommend a sanction of a 30–day suspension plus a showing of fitness to practice law prior to reinstatement.

In recommending discipline in cases in which lawyers fail to respond, the Board and the Court look to a respondent's eventual participation in the disciplinary proceedings and his prior discipline. *See, e.g., Steinberg,* 761 A.2d at 280–81 (the Court noted a distinction between lawyers who never respond and lawyers who ultimately respond and participate in the disciplinary process; the Court also noted that prior discipline can increase sanction).[17] A sanction is not meant to punish a respondent-

---

16. D.C. Court of Appeals Rule XI, § 8(a), provides: "An attorney under investigation has an obligation to respond to Bar Counsel's written inquiries in the conduct of an investigation, subject to constitutional limitations. In the event of an attorney's failure to respond to such an inquiry, Bar Counsel may request the Board to enter an appropriate order."

17. Although it could be argued that the seriousness of Respondent's underlying conduct should be a factor examined in these types of cases, the Committee declines to consider the allegations in the underlying complaint. The Court does not routinely "consider as a factor the severity of the underlying charge when fashioning an appropriate sanction." *In re Delaney,* 697 A.2d at 1213. The Court is "focused instead upon the egregiousness of the attorneys' deliberate disregard for the dis-

lawyer, but rather to protect the public, courts, and legal profession, and to deter future, similar conduct by respondent. *In re Abrams*, 689 A.2d 6, 12 (D.C.1997); *In re Ryan*, 670 A.2d 375, 380 (D.C.1996) (citations omitted). D.C. Bar R. XI, § 9(g), requires the imposition of consistent discipline for comparable conduct.

An "egregious failure to cooperate with the Office of Bar Counsel and the Board constitutes a serious violation of the D.C. Rules of Professional Conduct, and ... an offender runs the risk of being subjected to serious sanctions, including suspension coupled with a requirement to show fitness to practice law." *Lockie*, 649 A.2d at 547; *Delaney*, 697 A.2d at 1212. Failure to cooperate with a disciplinary investigation typically results in suspension for thirty days when the attorney ultimately participates in proceedings and answers the underlying complaint. *See, e.g., In re Beaman*, Bar Docket Nos. 19–99 et al. (BPR Feb. 9, 2001), *adopted*, 775 A.2d 1063 (30-day suspension with no fitness requirement where response to ethical complaint was filed on the day of the disciplinary hearing); *Steinberg*, 761 A.2d at 279 (no fitness requirement where response to complaint was filed the day before hearing). However, suspension, when exacerbated by other misconduct, can be for substantially longer. *See, e.g., In re Jones*, 534 A.2d 336, 340 (D.C.1987) (six-month suspension where respondent had a significant record of prior discipline).

Reinstatement following suspension is, at times, conditional. Where a respondent has not cooperated with Bar Counsel by the time of the hearing, reinstatement following suspension may be conditioned on a

showing of cooperation with Bar Counsel. *See, e.g., Beller*, 802 A.2d 340; *In re Mattingly*, 723 A.2d 1219 (D.C.1999); *Lilly*, 699 A.2d at 1135. Reinstatement conditioned on a showing of fitness to practice has also been ordered where circumstances are exacerbated by a respondent's behavior before and during disciplinary proceedings. *See, e.g., Giles*, 741 A.2d 1062 (persistent failure to cooperate); *In re Wright*, 702 A.2d 1251 (D.C.1997) (finding violations of four additional disciplinary rules); *Delaney*, 697 A.2d at 1213 (over 20 attempts to serve process); *Lockie*, Bar Docket Nos. 537–91 *et al.* at 4 (BPR July 26, 1993), *aff'd in part*, 649 A.2d at 546 (several failed attempts to serve process; failed to participate in hearing); *Smith*, Bar Docket Nos. 248–82 *et al.*, at 2–3 (BPR Jan. 13, 1994), *adopted*, 649 A.2d 299 (D.C.1994) (respondent deliberately evaded service and failed to promptly return client's property).

Unlike the respondents in *Smith*, *Delaney*, and other cases, Respondent did cooperate in the disciplinary process prior to being sanctioned, but Respondent's conduct is hardly better. Respondent filed a response to the underlying ethical complaint on the day that he was finally served with Bar Counsel's charges, and he participated in pre-hearing conferences and attended the hearing. However, he was well forewarned that his conduct was unacceptable and unethical. Respondent is no stranger to the disciplinary system; his disregard for the Rules of Professional Conduct is chronic, creating the impression that he has contempt for the disciplinary process and casting considerable doubt on his ability to practice law in an ethical manner.[18]

---

ciplinary process." *Id.* at 1214. So, too, the Committee will focus only upon Respondent's disregard for the disciplinary process.

**18.** Respondent testified that he is "somewhat" familiar with the Rules of Professional Conduct. Tr. at 45. He acknowledges that he is aware that failure to cooperate with Bar

Respondent has been sanctioned four times in the past. In one of those cases, he was suspended for 30 days for conduct identical to that perpetrated in this matter. *Steinberg*, 761 A.2d 279. His continuing and persistent disregard for the disciplinary process is demonstrated by a comparison of that case to the instant one. In both cases, Respondent repeatedly failed to respond to Bar Counsel's requests for information. In both cases, Respondent's disregard for the disciplinary process caused Bar Counsel to expend resources and seek an order of the Board compelling Respondent's response. When the Board's orders were issued and served, Respondent still failed to respond in a timely manner. In the earlier case, he responded only the day before his disciplinary hearing; in the instant case, he responded minutes before being served with Bar Counsel's charges. At both hearings, Respondent neither contested the facts alleged by Bar Counsel nor denied that he had violated the Rules of Professional Conduct or D.C. Bar R. XI. In both cases, Respondent effectively prevented the filing of formal charges by delaying and impeding Bar Counsel's investigation and by ignoring orders of the Board.

The Hearing Committee addressing the prior case against Respondent recommended a thirty-day suspension with a showing of fitness prior to reinstatement. 761 A.2d at 281. However, the Board declined to recommend fitness because Respondent ultimately responded to the complaints, participated in the disciplinary hearing, conceded the violations, and admitted responsibility, thereby not demonstrating the kind of disregard warranting a fitness requirement. *Id.* at 283–84. As a result, the Board recommended a thirty-day suspension and the Court accepted that recommendation. *Id.* at 285 (appending Board report and recommendation).

In the prior, analogous proceeding, Respondent was warned by the Board as follows:

> The Office of Bar Counsel has many matters which deserve prompt attention. Where attorneys cavalierly disregard requests for responses from Bar Counsel, Bar Counsel is then forced to expend substantial amounts of money and resources which could and should have been more appropriately expended on other pressing matters.

*Id.* at 283.

Similarly, in ordering a 30–day suspension, the Court warned Respondent as follows:

> [A]ttorneys cannot be allowed to willfully ignore and frustrate the efforts of Bar Counsel and the Board to obtain responses to charges of serious ethical misconduct. Attorneys must know that if they choose this course of action, the consequences will be severe.

*Id.* at 280. In light of Respondent's repeated failures, the consequences should now be more severe.

A showing of fitness is appropriate "in circumstances where the respondent has repeatedly evinced indifference (or worse) toward the disciplinary procedures by which the Bar regulates itself." *In re Siegel*, 635 A.2d 345, 346 (D.C.1993) (six-month suspension with fitness requirement for failure to cooperate and additional violations). *See also Lockie*, 649 A.2d at 547 (30–day suspension with fitness showing due to egregious failure to respond); *Smith*, 649 A.2d at 300 (30–day suspension

---

Counsel is an ethical violation of those rules. *Id.* Nevertheless, he, as in the past, violated the Rules by failing to cooperate. Respon-

dent's failure to abide by the rules is persistent, demonstrated by his continued failing to timely file submissions in this case.

with fitness showing due to respondent's "persistent disregard for the disciplinary process"). Respondent's previous discipline for failure to cooperate and his current failure to cooperate are evidence of this persistent disregard of his obligations to Bar Counsel and the Board, as well as of his disregard for the rules and warnings of the Court. The Committee submits that this pattern of disrespect for the disciplinary system is ample grounds for imposing a sanction of a 30-day suspension with a fitness requirement.[19]

Respondent's arguments in mitigation are rejected. Respondent attempts to save himself by using Ms. Barclay's misfortune to his benefit. However, he failed to respond to Bar Counsel on three separate occasions prior to Ms. Barclay's injury. Further, he failed to respond to the Board's Order in a timely fashion despite being given two opportunities to do so after his wife was released from the hospital and he returned to his Springfield residence. Respondent has not offered a reasonable excuse for his misconduct, and his last-minute response to the underlying complaint and his participation in the hearing should not save the day. Respondent has yet to demonstrate that he understands his obligations to Bar Counsel, the Board, and the Court.

19. The Hearing Committee recognizes that fitness recommendations in failure to cooperate cases, absent other violations, have been limited to situations where respondents failed to participate at all in the disciplinary process. Although Respondent did participate here, we are convinced that his prior discipline for failure to cooperate, coupled with the Board's stern warnings to Respondent of "severe consequences" for such behavior, make this an appropriate case for fitness. The Hearing Committee also believes that Respondent's repeated disregard for the disci-

## CONCLUSION

For the foregoing reasons, the Committee finds, based on clear and convincing evidence, that Respondent violated Rules 8.1(b) and 8.4(d) of the Rules of Professional Conduct and D.C. Bar R. XI, § 2(b)(3), and we recommend that he be suspended from the practice of law for 30 days and required to demonstrate fitness to practice as a condition of reinstatement.

AD HOC HEARING COMMITTEE

s/Jason E. Carter
Jason E. Carter, Esquire, Chair

s/Susan L. Butler/JEC
Ms. Susan L. Butler

s/Deborah J. Jeffrey/JEC
Deborah J. Jeffrey, Esquire

Date: February 25, 2004

plinary system would justify a substantially longer suspensory period than the 30 days recommended by Bar Counsel. *Compare In re Tinsley*, 582 A.2d 1192, 1194–95 (D.C.1990) (although not involving failure to cooperate in a disciplinary proceeding, one-year suspension with fitness showing was ordered in light of respondent's prior disciplinary record and pervasive indifference to his obligations). However, the Committee—bound by precedent—feels that a suspension of 30 days is more consistent with such precedent.