870 A.2d 603

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Andrew M. STEINBERG.**

**Misc. Docket AG No. 6, Sept. Term, 2004.**

Court of Appeals of Maryland.

March 18, 2005.

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel for Atty. Grievance Com'n), for petitioner.

Andrew M. Steinberg, Washington, DC, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE JJ.

BELL, C. J.

The Attorney Grievance Commission of Maryland (the "Commission"), through Bar Counsel and pursuant to Maryland Rule 16–751,[1] filed against Andrew M. Steinberg, the respondent, a Petition for Disciplinary or Remedial Action, in which it was alleged that he violated Rule 8.1 (Bar Admission and Disciplinary Matters)[2] and Rule 8.4 (Misconduct),[3] of the Rules of Professional Conduct, Appendix: Rules of Professional Conduct of the Maryland Rules, see Maryland Rule 16–812. We referred the matter, pursuant to Rule 16–752(a),[4] to the

---

1. Maryland Rule 16–751, as relevant, provides:

   "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Rule 8.1 Bar Admission and Disciplinary Matters

   An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

   \*      \*      \*

   (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

3. Rule 8.4 Misconduct

   It is professional misconduct for a lawyer to:

   \*      \*      \*

   (d) engage in conduct that is prejudicial to the administration of justice.

4. Rule 16–752(a) provides:

   "(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

Honorable Eric M. Johnson of the Circuit Court for Montgomery County, for hearing pursuant to Rule 16–757(c).[5] The respondent having failed to respond to the Petition, an order of default was entered against him. He subsequently appeared in court on August 25, 2004, the day set for the hearing and consented to the entry of a default judgment, which the hearing court construed as "essentially conceding to the allegations set forth in the petition." The respondent has not contested that construction. Thereafter, the court conducted a hearing.

Following the hearing, Judge Johnson, on October 7, 2004, having "tak[en] judicial notice of the pleading and the fact that the respondent essentially admitted the allegations as set forth," made findings of fact, by clear and convincing evidence, and drew conclusions of law. These proceedings are the result of disciplinary proceedings instituted against the respondent in the District of Columbia by the District of Columbia Bar's Board of Professional Responsibility. That Board determined that the respondent, by failing to respond to the District of Columbia Bar Counsel,[6] had violated two of the

---

5.  Maryland Rule 16–757(c) provides:

    "(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

6.  At the time of the hearing, on August 25, 2004, the hearing court was informed that, as a result of those violations, the Board Of Professional Responsibility had recommended that the respondent be suspended for sixty (60) days, without a requirement of demonstrating fitness as a condition for reinstatement, a decision that the District of Columbia Bar Counsel appealed to the District of Columbia Court of Appeals and which was then pending. Although still pending when the hearing court entered its findings of fact and conclusions of law on October 7, 2004, the decision of the Court of Appeals has now been issued. *In re Steinberg*, 864 A.2d 120 (D.C.2004). The Court of Appeals imposed as a

District of Columbia's Rules of Professional Conduct, i.e., Rule 8.4(d) (conduct that seriously interfered with the administration of justice) and Rule 8.1(b) (failing to respond reasonably to a lawful demand for information from Bar Counsel, a disciplinary authority), and a rule of court, Rule XI, § 2(b)(3) (failing to comply with an order of the Board on Professional Responsibility issued in connection with disciplinary proceedings).

The predicate for the rule violations found was the respondent's failure to respond to a letter the District of Columbia Bar Counsel sent him. That letter, dated January 4, 2002, transmitted a disciplinary complaint that had been filed against the respondent and requested that he respond within ten days. Further, the letter warned that failure to respond was a violation of the Rules of Professional Conduct. The respondent did not respond to the letter, which was not returned. The letter was resent on January 28, 2002, this time, in addition to the complaint, transmitting a subpoena *duces tecum.* Again, it requested a response within ten days and indicated that the respondent had an obligation to respond to the complaint, a failure to do so being chargeable as a disciplinary violation. As before, the respondent did not respond.

Nor did the respondent timely respond after being personally served with the letter and the subpoena on February 13, 2002, with answer due February 23, 2002. Subsequently, on

---

sanction a 30 day suspension, but required that the respondent demonstrate fitness as a condition for reinstatement. It explained:

"We agree entirely with the Hearing Committee's discussion of the appropriate sanction. As the Committee aptly noted in this case, '[i]n light of Respondent's repeated failures, the consequences should now be more severe.' Given Steinberg's disciplinary history, and, in particular, his disregard of the quoted warning in *Steinberg II* and his repetition of his misconduct in that case, we do not believe that a sixty-day suspension, without a requirement of proof of fitness, can reasonably be reconciled with that clear warning. Accordingly, Steinberg is hereby suspended from the practice of law for thirty days, and reinstatement shall be conditioned on proof of fitness to practice law."

Id. at 122.

April 5, 2002, Bar Counsel obtained an order from the Board of Professional Responsibility, requiring the respondent to respond to the ethical complaint within ten days of the order, or by April 15, 2002, and, still, the respondent failed to respond, although, once again, he received the order that had been mailed to him. Bar Counsel's investigator served the respondent personally a second time, this time, on May 1, 2002, with the Board's April 5, 2002 order. The respondent did not file an answer to the Board's order until November 1, 2002, when he hand delivered a letter dated October 28, 2002 to the Board.

The hearing court concluded that the respondent, "by his actions and admissions ... unethically and unprofessionally violated Rule 8.1 [ (b)] of the Bar Admission and Disciplinary Matters." It also concluded, albeit implicitly, that the respondent's conduct was prejudicial to the administration of justice, in violation of Rule 8.4(d).

No exceptions have been filed to the trial court's findings of fact and conclusions of law. Both the petitioner and the respondent have filed recommendations for sanction, however.

The petitioner recommends that the respondent be suspended indefinitely from the practice of law, a sanction the petitioner considers greater than that received by the respondent in the District of Columbia, where the misconduct occurred, and greater than ordinarily would be requested by the petitioner. In support of that recommendation, the petitioner directs our attention to the respondent's prior grievance history, which reflects that the respondent has engaged in prior misconduct, some, in particular, of a similar nature to that for which these proceedings were instituted. In 2000, the District of Columbia Court of Appeals, noting that he was "extremely dilatory in responding to Bar Counsel's requests for information on two separate but chronologically overlapping matters and failed to cooperate with the investigations," *In Re Steinberg,* 761 A.2d 279, 280 (D.C.2000), suspended the respondent for thirty days, and this Court reciprocated. *Attorney Griev. Comm'n v. Steinberg,* Misc. Docket (AG), No. 46, September Term, 2000

(Dec. 21, 2000). Subsequently, on April 17, 2001, the respondent was issued an informal admonition by the District of Columbia Bar Counsel for, in violation of Rule 1.4(a) of the Rules of Professional Conduct, failing to keep a client reasonably informed as to the status of the client's case and, earlier, in 1984, he had been issued an informal admonition for improperly distributing funds from a settlement, in violation of DR 9–103(B)(4) of the Code of Professional Responsibility.

The petitioner also relies on a Virginia reprimand, to which we reciprocated, *Attorney Griev. Comm'n v. Steinberg*, 348 Md. 1, 702 A.2d 690 (1997), that the respondent received for misconduct in violation of the Code of Professional Responsibility. That misconduct involved, the petitioner advises and our opinion reflects, neglect of a client's case, failure to deal honestly with the client, failing to return unearned fees and failing to turn the client's file over to new counsel. The District of Columbia Court of Appeals sanctioned the respondent for this same conduct by suspending him for thirty days. *In Re Steinberg*, 720 A.2d 900 (D.C.1998).

Finally, the petitioner calls our attention to what the District of Columbia Court of Appeals mostly recently said with respect to the respondent's dilatory conduct:

> "Attorneys cannot be allowed to willfully ignore and frustrate the efforts of Bar Counsel ... to obtain responses to charges of serious ethical misconduct. Attorneys must know that if they choose this course of action, the consequences will be severe."

*Steinberg*, 761 A.2d at 280. The wisdom of that observation and the respondent's grievance history suffice to warrant the imposition of the sanction it recommends, the petitioner submits.

The respondent opposes an indefinite suspension, the sanction recommended by the petitioner and recommends the same sanction, a sixty (60) day suspension[7], as that the

---

7. The respondent argued in this Court that he had been suspended for sixty days and that that sanction was imposed by a full panel of the

District of Columbia Board of Professional Responsibility recommended to the District of Columbia Court of Appeals. Emphasizing his belief that the sanction he received from the District of Columbia is required to be imposed as the sanction of this Court, the respondent notes that, notwithstanding the District of Columbia court's observation with respect to the need for lawyers to be aware of the consequences of non-cooperation with Bar Counsel, the Court of Appeals did not impose an indefinite suspension, as the petitioner proposes.

The only issue to be resolved is, therefore, the appropriate sanction to be imposed in Maryland. The conduct that is the basis for the violations of the Rules of Professional Conduct found, occurred in the District of Columbia and is directly related to that court system's disciplinary structure and procedures. And the conduct resulted in a sanction being imposed by the District of Columbia Court of Appeals. Nevertheless, the petitioner did not initiate, or process, this case as a reciprocal discipline matter. Consequently, the rules applicable to reciprocal discipline cases do not apply. *See* Maryland Rule 16–773.[8]

The purpose of the sanction imposed on an attorney following disciplinary proceedings is to protect the public rather than to punish the attorney who engages in misconduct,

---

Court of Appeals, which determined, because of his ultimate cooperation with Bar Counsel, it to be the appropriate one. The respondent is wrong. As indicated *supra*, note 6, while the Board of Professional Responsibility recommended a sixty day suspension, without the requirement that fitness to practice be shown before readmission, the actual sanction imposed by the D.C. Court of Appeals was a 30 day suspension, with the requirement that, as a condition for reinstatement, the respondent establish his fitness to practice.

8. Rule 16–773(g) limits challenges to the original adjudication in reciprocal discipline cases to "notice and opportunity to be heard" or "infirmity of proof" *see Attorney Griev. Comm'n v. Roberson*, 373 Md. 328, 818 A.2d 1059 (2003), although either party to the proceedings may show "why corresponding discipline or inactive status should not be imposed," Maryland Rule 16–773(c), and seek to establish, by clear and convincing evidence, that exceptional circumstances exist that will allow avoidance of the reciprocal discipline. Rule 16–773(e).

and the decision as to sanction in a particular case does, and must, depend on the facts and circumstances of that case. *E.g., Attorney Griev. Comm'n v. Macdougall,* 384 Md. 271, 283, 863 A.2d 312, 320 (2004); *Attorney Griev. Comm'n v. Santos,* 370 Md. 77, 88–89, 803 A.2d 505, 511–12 (2002).[9] Notwithstanding that the petitioner has not sought reciprocal discipline, the facts and circumstances in this case, very important ones, at that, include that the conduct warranting sanction occurred in the District of Columbia and that, after considering the matter, the District of Columbia Court of Appeals has imposed a sanction.

*Attorney Griev. Comm'n v. Ayres–Fountain,* 379 Md. 44, 838 A.2d 1238 (2004) is instructive. In that case, the respondent was essentially a Delaware lawyer and the misrepresentations upon which the petitioner in this Court principally relied were made in certifications contained in annual filings required to be made to the Supreme Court of Delaware in

---

**9.** This standard also applies in the case of reciprocal discipline. *See Attorney Griev. Comm'n v. Ruffin,* 369 Md. 238, 253–254, 798 A.2d 1139, 1148 (2002), in which we recently explained our approach to reciprocal discipline:

"We are prone, *see Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 83, 710 A.2d 926, 934 (1998); *Attorney Griev. Comm'n v. Richardson,* 350 Md. 354, 365–66, 712 A.2d 525, 530–31 (1998), but not required, see *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 324, 697 A.2d 83, 87 (1997), to impose the same sanction as that imposed by the state in which the misconduct occurred. Indeed, the Court is duty-bound to assess for itself the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission, *Gittens,* 346 Md. at 326, 697 A.2d at 88, to look not only to the sanction imposed by the other jurisdiction, but to the particular facts and circumstances of each case, the outcome being dependent upon the latter, but with a view toward consistent dispositions for similar misconduct. *Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 222, 665 A.2d 1059, 1061 (1995) (quoting *Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142, 527 A.2d 325, 330 (1987)); *Attorney Griev. Comm'n v. Saul,* 337 Md. 258, 267–68, 653 A.2d 430, 434–35 (1995). We ordinarily will defer to the sanctioning State when the two States' purpose in disciplining counsel is the same." [*Gittens,*] 346 Md. at 327, 697 A.2d at 88.

See *Attorney Griev. Comm'n v. Ayres–Fountain,* 379 Md. 44, 57, 838 A.2d 1238, 1246 (2004); *Attorney Griev. Comm'n v. Roberson,* 373 Md. 328, 355–56, 818 A.2d 1059, 1076 (2003).

support of its oversight of the administration of justice in that State. *Id.* at 58, 838 A.2d at 1246. We deferred to the Supreme Court of Delaware, cognizant that the Delaware Supreme Court was fully informed of the facts and circumstances of the respondent's conduct and had reviewed, "consider[ing] the matter carefully," the Report and Recommendation of Sanction of the Board of Professional Responsibility, which contained, in addition, the Board's discussion of the considerations it took into account in fashioning the sanction recommendation and its painstaking analysis of the cases bearing on the proper sanction. *Id.* We explained:

> "where a respondent's most serious misconduct involves misrepresentations, and those misrepresentations are to the Supreme Court of the State in which he or she principally practices and that sanctioned him or her, it ordinarily is appropriate to defer to that court, notwithstanding that the sanction it imposed is not identical to the one that may have been imposed by this Court were the same conduct to have occurred in this State."

*Id.* at 59, 838 A.2d at 1247.

A similar analysis is appropriate, we believe, in this case. The extended failure to cooperate occurred in the District of Columbia and had a direct and adverse impact on its grievance mechanism. It is obvious that the Court of Appeals of the District of Columbia, whose responsibilities, like ours, include oversight and regulation of the profession, was aware of the charges, any mitigating or aggravating factors and carefully weighed the recommendations, especially the rationale for that of the Board of Professional Responsibility. Accordingly, the respondent is indefinitely suspended from the practice of law.[10]

---

**10.** Both the petitioner and the respondent believe, apparently, that an indefinite suspension is a different, and more severe, sanction than that imposed by the District of Columbia. It is not. As indicated the Court of Appeals ordered the respondent suspended for 30 days, but required a showing of fitness as a condition for reinstatement. Thus, the respondent may be reinstated to the practice of law in the District of Columbia only by order of the court. We pointed out in *Attorney Griev. Comm'n v. Ruffin*, 369 Md. 238, 253, 798 A.2d 1139, 1148 (2002),

The respondent's reinstatement to the Maryland bar will be conditioned upon his reinstatement to the District of Columbia bar.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715.C., FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ANDREW M. STEINBERG.*

"Unlike an indefinite suspension, in Maryland, a suspension for a specified period does not trigger a reapplication process or require Court approval for reinstatement; all that is required is that the attorney certify compliance with the terms of the suspension and Bar Counsel confirms the certification and is satisfied of the truth of the certification. See Maryland 16–713.a.2."

In Maryland, therefore, an indefinite suspension ordinarily is the equivalent of any suspension, no matter the length, that requires a court order for reinstatement.