697 A.2d 83

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## James P. GITTENS.

Misc. (Subtitle BV), No. 48, Sept. Term, 1995.

Court of Appeals of Maryland.

July 25, 1997.

Melvin Hirshman, Bar Counsel, and Raymond A. Hein, Assistant Bar Counsel, for the Attorney Grievance Commission of Maryland, for Petitioner.

Thomas G. Bodie, Towson, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

BELL, Chief Judge.

The Attorney Grievance Commission of Maryland, the petitioner, acting through Bar Counsel, filed against James P. Gittens, the respondent, a Petition For Disciplinary Action Pursuant to Rule BV16c.[1] In that petition, noting the respondent's conviction in federal court of theft and that this Court

---

1. Effective January 1, 1997, the rules pertaining to attorney discipline were placed in Title 16, Chapter 700 of the Maryland Rules, as Rules 16–701—16–718. Inasmuch as the BV Rules were in effect when this case was initiated, we shall refer to them. Rule BV16c at that time provided:

 c. Further Proceedings. In any case in which the Court of Appeals has entered an order suspending an attorney until its further order, pursuant to this Rule, further proceedings on the charges shall be conducted pursuant to Rules BV9 (Charges), BV10 (Hearings) and BV11 (Disposition of Charges), to determine whether the crime warrants discipline and if so, the extent thereof. If the attorney has appealed from his conviction, the hearing shall be delayed until completion of the appellate process. If the conviction is reversed at any stage of the appellate process, the suspension shall be terminated. If after the completion of the appellate process, the conviction has not been reversed, or if the attorney does not seek appellate review of the conviction, the hearing shall be held within a reasonable time after the mandate is issued, or, if no appellate review is sought, within a reasonable time after the expiration of the time for appeal from the conviction. However, if the attorney is incarcerated following termination of the appellate process or expiration of the time for an appeal (if no appeal has been taken), the hearing shall be set within a reasonable time following termination of incarceration unless the attorney
 (i) requests an earlier hearing; and
 (ii) makes all arrangements, including financial arrangements, for his presence at the earlier hearing on the date set by the Court.

earlier had suspended the respondent pursuant to BV16b [2], it alleged that the respondent, by violating Rule 8.4(b) and (c) [3] of the Maryland Rules of Professional Conduct, did engage in misconduct as defined in Maryland Rule BV1k.[4] We referred the matter to Judge Ronald A. Silkworth of the Circuit Court for Anne Arundel County for hearing. After holding a hearing, Judge Silkworth made findings of fact and conclusions of law, the former by the clear and convincing standard, as follows:

## "FINDINGS OF FACT

"1. The Respondent, James P. Gittens was admitted to the Maryland Bar on October 27, 1988.

"2. The Respondent also has been or is admitted to the Bars of the following courts: District of Columbia Court of Appeals, from which he is currently suspended; Supreme Court of Pennsylvania; United States District Court for the District of Maryland, from which he is currently suspended; and the United States District Court for the District of Columbia, in which his status is inactive and in which he was ordered not to practice without permission.

---

2. Maryland Rule BV16b provides:
 The Court of Appeals shall issue an order to show cause why the attorney should not be suspended from the practice of law until the further order of the Court of Appeals. Upon consideration of the charge and the answer to the order to show cause the Court of Appeals may enter an order, effective immediately, suspending the attorney from the practice of law until its further order. The provisions of Rule BV13 apply to the suspension.

3. It is professional misconduct for a lawyer to:
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

4. That rule defines "misconduct" as "an act or omission by an attorney, individually or in concert with any other person or persons which violates the Disciplinary Rules of the Code of Professional Responsibility, as adopted by Rule 1230, whether or not the act or omission occurred in the course of an attorney-client relationship."

"3.	Respondent primarily practiced in the District of Columbia.

"4.	That on January 5, 1994, Respondent was charged in a nine-count indictment in the United States District Court for the District of Columbia with violations of 18 U.S.C. § 1341 (Mail Fraud); 18 U.S.C. § 2 (Aiding and Abetting); 22 D.C.Code §§ 3811 and 3812 (First Degree Theft); and 22 D.C.Code § 3901 (Theft Against a Person Aged Sixty or Older).

"5.	That on September 21, 1994, pursuant to a plea agreement by which Respondent pled guilty to Count 4 of the Indictment and all other counts were dismissed, judgment was entered against Respondent on one count of first degree theft against a person sixty or older. The Respondent was sentenced to imprisonment for a term of not less than 18 months nor more than 54 months.

"6.	The actions for which Respondent was convicted before the U.S. District Court for the District of Columbia were theft of a client's funds entrusted to him and held in his escrow account.

"7.	Respondent abused alcohol on weekends beginning in college, later began to use drugs, and became addicted to cocaine in the late 1980's.

"8.	After depleting most of his personal assets in order to purchase cocaine to satisfy his addiction, Respondent began to withdraw money from his attorney's escrow account in order to purchase cocaine.

"9.	Respondent did seek drug treatment and was an inpatient at the Psychiatric Institute of Washington in 1991.

"10.	That, upon being released from the twenty-eight (28) day in-patient treatment at the Psychiatric Institute of Washington, Respondent participated in a six (6) month after-care program.

"11. That Respondent last used illegal drugs on or about March 13, 1992. He has been drug and alcohol free since March 13, 1992.

"12. That since the time of his last use of illegal drugs, Respondent has maintained steady employment and has complied with the rules and regulations of his probation officer.

"13. That Respondent has continued to actively participate in programs aimed at controlling his prior addictions to drugs and alcohol, including Narcotics Anonymous and Alcoholics Anonymous.

"14. That Respondent sought the professional care of Susan Feister, M.D., who gave her opinion that the cause of Respondent's violation of the Maryland Rules of Professional Conduct in taking his clients funds was his addiction to cocaine. The Court agrees.

"15. Dr. Feister gave her additional opinion that Respondent was in the highest percentile of those former addicts who, based on their behavior since the time of their addiction, would not resort at any time in the future to the use of abuse of illegal drugs. Respondent has, since 1991, counseled with Jerome Griffin, licensed clinical social worker, whom the Court considers an expert in regard to the counseling of addicted persons. The Court accepts the opinion of Dr. Griffin, that Respondent, due to his long period of abstinence and his responsibility, evidenced by his employment and care for his family, will not in the future likely abuse drugs or alcohol. Respondent has been able to maintain a balance in his life and work towards his rehabilitation since his release from the Lorton Reformatory for Males.

"16. That Respondent has counseled with Richard B. Vincent, Director of the Lawyer Counseling Committee of the Maryland State Bar Association. Mr. Vincent also believes that the cause of Respondent's misuse of client funds was his addiction. The Court agrees. Mr. Vin-

cent also concurs that the Respondent, based upon his efforts at rehabilitation, is likely to continue drug free. He recommends an extended period of close monitoring.

"17. That Respondent has been enthusiastic and steadfast in his recovery and rehabilitation.

"18. That on March 10, 1996 pursuant to Maryland Rule BV 16b, the Court of Appeals of Maryland suspended Respondent from practicing law in Maryland pending further order.

### "CONCLUSIONS OF LAW

"1. That the Respondent, by committing the acts that resulted in his criminal conviction, engaged in misconduct as defined in Maryland Rule BV1k.

"2. That the Respondent's acts of misconduct violated Maryland Rule of Professional Conduct 8.4, subsections (b) and (c)."

As the findings of fact indicate, the respondent is presently suspended from practicing law in the District of Columbia. The respondent was suspended following his sentencing, which occurred on September 21, 1994, and the suspension has been in effect since December 19, 1994, when the District of Columbia Court of Appeals passed the initial order, which order was amended by a subsequent order dated August 14, 1995.

Taking no exceptions to the hearing judge's findings of fact and conclusions of law, the petitioner recommends that the respondent be disbarred. In support of that recommendation, the petitioner emphasized that the charge to which the respondent pled guilty involved "an unauthorized use, disposition, and transfer" of $88,379.92 of money belonging to someone else, and thus was a misappropriation. This Court has made it quite clear, it points out, that misappropriation of funds entrusted to his or her care by an attorney "is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Griev. Comm'n v. Williams*, 335 Md. 458, 474, 644 A.2d 490, 497 (1994); *Attor-*

*ney Griev. Comm'n v. Casalino,* 335 Md. 446, 644 A.2d 43, 46 (1994); *Attorney Griev. Comm'n v. White,* 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Griev. Comm'n v. Ezrin,* 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988). Recognizing that in the past this Court has imposed lesser sanctions, most frequently indefinite suspension, when it has been satisfied that the cause or a substantial part of the cause of the misconduct is alcoholism, drug addiction, psychiatric disorders, or the like, *e.g., Attorney Griev. Comm'n v. Willemain,* 297 Md. 386, 395–96, 466 A.2d 1271, 1275 (1983); *Attorney Griev. Comm'n v. Finlayson,* 293 Md. 156, 160, 442 A.2d 565, 567 (1982); *Attorney Griev. Comm'n v. Flynn,* 283 Md. 41, 45–47, 387 A.2d 775, 778 (1978); *Attorney Griev. Comm'n v. Cooper,* 279 Md. 605, 369 A.2d 1059 (1977), the petitioner reminds us that, in *Attorney Griev. Comm'n v. Kenney,* 339 Md. 578, 591, 664 A.2d 854, 860 (1995), we cautioned the Bar that "in the future, . . . absent truly compelling circumstances, alcoholism should not provide mitigation where an attorney has been found to have committed a violation which would ordinarily warrant disbarment." The petitioner urges that this Court send the same message where the misconduct warranting disbarment was caused by drug addiction. Thus, it concludes as to the respondent's case, "[w]hile cocaine addiction may have "caused" the Respondent's misappropriation(s) in the sense that it created the motivation to steal client funds and other escrow monies to support his drug habit, that addiction should not serve as a mitigating circumstance justifying a disciplinary sanction less than disbarment." [5]

---

5. Alternatively, the petitioner argues:

Even accepting that the Respondent's cocaine addiction was a causal factor, it should be viewed as an aggravating, rather than a mitigating circumstance. Under the Standards for Imposing Lawyer Sanctions adopted in 1986 by the American Bar Association, one factor that may be considered in aggravation is the "dishonest or selfish motive" of the attorney. ABA Standards, § 9.22(b). Another is "illegal conduct, including that involving the use of controlled substances." ABA Standards, § 9.22(k) (1992 Amendments). Clear-

Like the petitioner, the respondent has taken no exceptions to Judge Silkworth's findings of fact or conclusions of law. Instead, he urges this Court to adopt those findings and conclusions, find that his misconduct was caused by his cocaine addiction, and continue in effect his indefinite suspension from the practice of law. The respondent offers as justification for those actions his pre-cocaine record as an attorney, particularly noting that, at that time, his record was completely free of even the allegation of misconduct; the opinion of three professionals and Judge Silkworth that cocaine addiction was the reason that he engaged in misconduct; his thus far successful attempt to control his addiction, along with the opinion of the professionals who have helped him that he is not likely to abuse drugs and alcohol in the future; and the fact that he has been punished, including incarceration, as a result of the misconduct that is the basis for the petition for disciplinary action.

The conduct that is the subject of the proceedings *sub judice* occurred in the District of Columbia where the respondent primarily practiced law. As we have seen, following his guilty plea to theft, pursuant to a plea agreement, the District of Columbia Court of Appeals suspended the respondent's privilege to practice law and that suspension has remained in effect since then. Consequently, although not pled as such, this case is in reality a reciprocal discipline case. *See Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 221–22, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Saul,* 337 Md. 258, 267–68, 653 A.2d 430, 434 (1995); *Attorney Griev. Comm'n v. Hopp,* 330 Md. 177, 185–86, 623 A.2d 193, 197

---

ly, the Respondent's misappropriation of client funds and other escrow monies to purchase cocaine was motivated by self-interest, *i.e.,* the need to satisfy his addiction. The Respondent made the choice to start using cocaine, an illegal controlled dangerous substance, and he should be held accountable for that choice. Because the use of cocaine is itself illegal, the Respondent's misappropriation of client funds to purchase cocaine should not be mitigated by his drug addiction; rather, that addiction should be considered as an aggravating factor. *See In the Matter of Jones,* 252 Kan. 236, 843 P.2d 709 (1992).

(1993); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 425–26, 550 A.2d 1150, 1152 (1988); *Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142–43, 527 A.2d 325, 330 (1987); *Attorney Griev. Comm'n v. Haupt,* 306 Md. 612, 614–15, 510 A.2d 590, 591–92 (1986); *Attorney Griev. Comm'n v. Bettis,* 305 Md. 452, 455, 505 A.2d 492, 493 (1986); *Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 171, 482 A.2d 497, 498 (1984); *Attorney Griev. Comm'n v. Rosen,* 301 Md. 37, 39, 481 A.2d 799, 800 (1984).

 Maryland Rule BV10e, captioned "Conviction of Crime—Adjudication of Misconduct," provides, as relevant:

1. Proof of Guilt. In a hearing of charges pursuant to this Rule, a final judgment by a judicial tribunal in another proceeding convicting an attorney of a crime shall be conclusive proof of the guilt of the attorney of that crime. A plea or verdict of guilty, or a plea of *nolo contendere* followed by a fine or sentence, is a conviction within the meaning of this Rule. A final adjudication in a disciplinary proceeding by a judicial tribunal or a disciplinary agency appointed by or acting at the direction of a judicial tribunal that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule.

Thus, the respondent's conviction pursuant to his guilty plea, which also was the basis for the disciplinary proceedings in the District of Columbia and in this Court, conclusively establishes that he engaged in misconduct. So too does the fact of the suspension imposed by the District of Columbia Court of Appeals, it being a final adjudication in a disciplinary proceeding. Notwithstanding that this Court has often imposed a sanction of facially equal severity to that imposed by a sister state, *see, e.g., Bettis,* 305 Md. 452, 505 A.2d 492 (1986); *Moore,* 301 Md. 169, 482 A.2d 497; *Attorney Griev. Comm'n v. James,* 300 Md. 297, 305–06, 477 A.2d 1185, 1189 (1984); *Attorney Griev. Comm'n v. Hines,* 304 Md. 625, 500 A.2d 646 (1985); *Rosen,* 301 Md. 37, 481 A.2d 799 (1984), there is no requirement in reciprocal discipline cases that this should be

done; we need not apply the same sanction as the District of Columbia Court of Appeals.

Indeed, we have stated the rule in such cases to be:

When the Court considers the appropriate sanction in a case of reciprocal discipline, we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct.

*Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 222, 665 A.2d 1059, 1061 (1995) (quoting *Parsons,* 310 Md. at 142, 527 A.2d at 330).

 Being duty-bound to assess for ourselves the propriety of imposing suspension rather than disbarment does not preclude giving deference to the action taken by the jurisdiction where the misconduct occurred. Because one of the factors to be considered is the disciplinary determination of that jurisdiction, this may be done where the purpose of attorney discipline is the same in both jurisdictions. In this case, the primary purpose of attorney discipline proceedings in the District of Columbia, *see In re Sharp,* 674 A.2d 899, 900 (D.C.App.1996) ("[T]he traditional view of Anglo–American jurisprudence [is] that disbarment is intended not as punishment, but as protection to the public....") (quoting *Attorney Griev. Comm'n v. Andresen,* 281 Md. 152, 155, 379 A.2d 159, 161 (1977), in turn quoting *Maryland State Bar Ass'n v. Sugarman,* 273 Md. 306, 318, 329 A.2d 1, 7 (1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1397, 43 L.Ed.2d 654 (1975)), and in this State, *see Attorney Grievance Com'n of Maryland v. Breschi,* 340 Md. 590, 601, 667 A.2d 659, 665 (1995); *Attorney Griev. Comm'n v. Myers,* 333 Md. 440, 446–47, 635 A.2d 1315, 1318 (1994); *Attorney Griev. Comm'n v. Protokowicz,* 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Attorney Griev. Comm'n v. Kramer,* 325 Md. 39, 54, 599 A.2d 100, 108 (1991), is identical; it is not to punish the errant attorney, but rather to protect the public from unscrupulous practitioners, as well as to

maintain public trust in the legal profession by demonstrating intolerance for unprofessional conduct.

■ Without mentioning this circumstance, in *Saul*, we deferred to the Virginia Board's disciplinary determination, citing the extensive nature of the Virginia proceedings, Saul's minimal involvement in the bank fraud, and the additional requirements he must meet for readmission in Virginia. *Attorney Griev. Comm'n v. Saul*, 337 Md. at 269–70, 653 A.2d at 435–36. Indeed, we have almost always deferred. *See Willcher*, 340 Md. at 222–23, 665 A.2d at 1061–62. A similar result likewise is warranted in the case *sub judice*. Shortly after the respondent entered his plea of guilty, the District of Columbia Court of Appeals passed an order suspending him from the practice of law in that jurisdiction. And that Court apparently monitored the respondent's progress, judging from the fact that it has amended its order during the period of suspension. There is no basis for supposing that the District of Columbia treats these matters less seriously or wholly inconsistently with the manner exercised by this Court. On the contrary, deference should be paid to the District of Columbia Court of Appeals as demonstrated by the fact that it is loath to mitigate misconduct on the basis of drug or other substance addiction or abuse. *See e.g., In re Hopmayer*, 625 A.2d 290 (D.C.App. 1993). Accordingly, we shall continue the respondent's suspension indefinitely. Moreover, reinstatement will be conditioned upon his compliance with the conditions set by the District of Columbia Court of Appeals.

We do not at all retreat from the views we expressed in *Kenney*, 339 Md. at 594–95, 664 A.2d at 861. We simply do not need to apply them in this reciprocal discipline case.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COURT COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JAMES P. GITTENS.