73 A.3d 243

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Garland Howe STILLWELL.

Misc. Docket AG No. 43, Sept. Term, 2009.

Court of Appeals of Maryland.

Aug. 22, 2013.

Raymond A. Hein, Deputy Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

William C. Brennan, Jr. (of Brennan Sullivan & McKenna LLP, Greenbelt, MD), for respondent.

Argued before BARBERA, C.J., BATTAGLIA, GREENE, ADKINS, BELL *, MURPHY ** and JOHN C. ELDRIDGE (retired, specially assigned), JJ.

BELL, C.J.

Garland Howe Stillwell, the respondent, by order of the District of Columbia Court of Appeals, dated August 27, 2009, was suspended from the practice of law in the District of Columbia. The Attorney Grievance Commission, the petitioner, pursuant to Maryland Rule 16–773(b),[1] and acting through Bar Counsel, filed, in this Court, a petition for disciplinary or remedial action, based on the misconduct for which the respondent was suspended in the District of Columbia, against the respondent. Citing the opinion of the District of Columbia

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

1. Maryland Rule 16–773(b) provides:

"Petition in Court of Appeals. Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). A certified copy of the disciplinary or remedial order shall be attached to the Petition, and a copy of the Petition and order shall be served on the attorney in accordance with Rule 16–753."

Court of Appeals, noting particularly its recitation of the Rules the respondent admitted violating, and alleging that the professional misconduct that those violations constituted and for which the respondent was disciplined was also professional misconduct in Maryland, it requested this Court, inter alia, to issue a Show Cause Order and to take appropriate disciplinary action. This Court issued the requested Show Cause Order pursuant to Maryland Rule 16–773(c)[2] and, after both parties filed their responses to the Show Cause Order, heard oral argument.

The underlying basis of these proceedings is the respondent's admission that he violated Rules 8.4(c)[3] and 1.7(b)(1)[4]

---

**2.** Maryland Rule 16–773(c) provides:

"Show cause order. When a petition and certified copy of a disciplinary or remedial order have been filed, the Court of Appeals shall order that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status should not be imposed."

**3.** Rule 8.4(c) of the District of Columbia Rules of professional Conduct provides:

"It is professional misconduct for a lawyer to:

❖   ❖   ❖   ❖   ❖   ❖

(c) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

**4.** Rule 1.7(b)(1) of the District of Columbia Rules of professional Conduct provides:

"(b) Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:

"(1) That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter even though that client is unrepresented or represented by a different lawyer...."

The Maryland counterpart is not identical, but is substantially similar. It is MLRPC 1.7(a), which provides:

"(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:

"(1) the representation of one client will be directly adverse to another client; or

"(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibili-

of the District of Columbia Rules of Professional Conduct (DCRPC). The misconduct underlying those Rules violations consisted of ". . . inaccurately represent[ing] his status at the law firm where he was employed, ma[king] a false representation on behalf of a friend, improperly charg[ing] personal expenses to others, work[ing] outside the law firm against the law firm's written policies, and assert[ing] a position on behalf of clients that was adverse to a position taken by a client of the firm without first obtaining informed consent of all parties." The respondent's voluntary admissions were made upon advice of counsel and in connection with a petition for negotiated discipline and were reflected in that portion of the petition setting forth the parties' stipulation of facts and charges and supported by the respondent's affidavit. The petition for negotiated discipline stated the "agreed upon sanction," a 60 day suspension with no fitness requirement, and justification for that sanction in the form of a review of the relevant precedents with respect to the range of sanctions the District of Columbia Court of Appeals has imposed for similar professional misconduct. Also pertinent to the appropriateness of the sanction, the petition set forth the parties' agreement as to aggravating as well as factors mitigating:

"An aggravating factor is the prejudice to Respondent's law firm, which absorbed some of Respondent's personal expenses under false pretenses, and did not seek to recover the full amount in reimbursement from Respondent. The dishonest nature of Respondent's conduct is also an aggravating factor.

"In mitigation, Respondent has acknowledged that he engaged in the misconduct described above, has taken full responsibility for his actions, reimbursed the law firm for the amount it sought, has undergone professional counseling to prevent such ethical lapses from recurring, and has no history of discipline."

---

ties to another client, a former client or a third person or by a personal interest of the lawyer."

The petition for negotiated discipline was referred to a hearing committee of the Board of Professional Conduct, which, after considering the petition, including the statement of relevant precedent in support of the agreed upon sanction submitted by Bar Counsel, the supporting affidavit filed by the respondent, and "the representations made during the limited hearing by Respondent and Bar Counsel," made findings and issued its report recommending approval of the petition for negotiated discipline. In deciding to recommend approval of the negotiated discipline, the hearing committee considered, as it was required to do, whether the admissions of the respondent were knowing and voluntary, whether the facts, as related in the petition or shown during a limited hearing support the admissions and the agreed upon sanction and whether the agreed upon sanction is appropriate, justified by the facts and circumstances. As to the latter factor, characterized by the hearing committee as the most complicated of the three, it wrote:

"Upon consideration of the entire record in this matter, including the circumstances in aggravation and mitigation and the relevant precedent, we conclude that the agreed upon negotiated discipline is justified. As described in the relevant precedent section of the Petition, the range of sanctions for Respondent's multiple violations is a nonsuspensory sanction to disbarment.... In this instance, Respondent has stated convincing factors in mitigation of his offense and has no history of discipline. He is charged with only two offenses during a relatively short period of time. The Hearing Committee is satisfied the Respondent is sincere in his regret and has taken steps to remedy his violations and prevent recurrences."

The District of Columbia Court of Appeals accepted the recommendation. In doing so, it commented: "The respondent has accepted responsibility for his actions, repaid all monies owed and undertaken action to prevent future lapses."

As indicated, this Court issued a Show Cause Order, to which both the petitioner and the respondent filed a response. Not unexpectedly, the respondent answers that he "has no

grounds, as set forth in Maryland Rule 16–773(e), why corresponding discipline should not be imposed by this Court." Proffering that the imposition of reciprocal discipline in this case "would be consistent with this Court's cases that hold, and emphasize, that "[t]he primary purpose of attorney discipline is the protection of the public, not the punishment of the attorney," he therefore urges the Court to impose corresponding discipline. Moreover, citing *Attorney Griev. Comm'n v. Whitehead,* 390 Md. 663, 683, 890 A.2d 751, 763 (2006) and *Attorney Griev. Comm'n v. Weiss,* 389 Md. 531, 544, 886 A.2d 606, 613 (2005), the respondent submits, "Maryland deviates from sanctions imposed by sister jurisdictions when the Maryland cases *clearly demonstrate* that the misconduct warrants a *substantially different disposition.*" He argues that this is not a case in which a substantially different sanction is warranted, as clearly demonstrated by our cases; therefore, we should adhere to well-settled and well reasoned principles of comity and follow the lead of the District of Columbia Court of Appeals.

As predictably, the petitioner, in its answer, urges, and makes the case for, a substantially different sanction than the one imposed by the District of Columbia. Citing the rule in this State, that, when considering reciprocal discipline cases, the Court "is inclined, but not required, to impose the same sanction as that imposed by the state in which the misconduct occurred, the petitioner notes that this Court is required to assess for itself the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission", *see Weiss,* 389 Md. at 546, 886 A.2d at 615; *Attorney Griev. Comm'n v. Scroggs,* 387 Md. 238, 254, 874 A.2d 985, 995 (2005), *see also Whitehead,* 390 Md. at 672, 890 A.2d at 756 (applying the same test when the sanction imposed by this Court is less than that imposed by the sister jurisdiction), and that, while the Court "usually [does] not deviate from the original jurisdiction's sanction, [it] will do so when the conduct involved is of such nature that it would not be tolerated from any member of the Bar in this State if the conduct occurred here," *Weiss,* 389 Md. at 552, 886 A.2d at 618. Consistent with this observa-

tion, the petitioner argues that the misconduct of the respondent in this case warrants more than a 60 day suspension.

To make its case, in this regard, the petitioner emphasizes the stipulations of fact relevant to the Rule 8.4(c) violation:

"1. For some period of time while he was an associate attorney at the law firm of Pillsbury Winthrop Shaw Pittman LLP (hereafter 'the Firm'), Respondent's biography with the African American Real Estate Professionals Association (AAREP) identified him as 'senior counsel' at the Firm. Respondent did not immediately correct that inaccurate representation of his status after the Firm informed him in January 2008 that he needed to do so. . . .

"2. In August 2006, 'Respondent used Firm equipment to prepare and send a false employment verification' on behalf of a personal friend to a car dealer. In that verification, Respondent, knowing that the individual (identified as 'TB') had only worked for the Firm as a receptionist for approximately two weeks in June 2006, falsely asserted 'that she was still employed at the Firm and had been since August 2005.' . . .

"3. In 2007, 'Respondent used the Form's word processing staff to prepare a resume for TB falsely indicating that TB had been employed with the Firm from August 2005 until July 2007.' On the resume prepared for TB, Respondent falsely listed himself as 'Senior counsel' to the Firm. . . .

"4. 'While working a the Firm, Respondent charged a number of personal expenses to the law firm, to *pro bono* accounts, and to a client for whom Respondent did no legal work.' This conduct included reassigning 'as much as $ 5,000 worth of cell phone and text message charges to clients, professional activities, and business development, even though some of the charges were personal in nature, . . . .'

"5. Contrary to the Firm's written 'Outside Work" policy, Respondent launched a personal real estate venture known as TCR in 2007 without obtaining the Firm's permission to pursue such an outside business interest. 'At times, Re-

spondent used the Firm's resources, including computers and the word processing department, to draft TCR client agreements and TCR payment receipts.' . . .

"6.   Through TCR, Respondent provided services to a married couple (identified as the 'LPs') with respect to a real estate purchase offer made by Greenbaum & Rose Associates, a real estate company that was a client of the Firm. Although the Firm did not represent Greenbaum & Rose in its negotiations with the LPs, Respondent did not conduct a conflict of interest check within the Firm, and he did not disclose to either the LPs or Greenbaum & Rose the potential conflict requiring informed consent of all affected parties . . . ."

From these stipulated facts, the petitioner argues:

"In the present matter, Respondent engaged in several distinct acts of dishonesty, fraud, deceit or misrepresentation, none of which can be interpreted as anything other than intentionally dishonest.   Respondent knew he was an associate at the Shaw Pittman firm, yet he held himself out as 'senior counsel' on a professional biography and on the resume he prepared for the individual identified as TB. He knew that TB only worked at the firm for a two week period, yet he participated in generating two separate documents (the August 2006 employment verification and a resume prepared in 2007) that significantly misrepresented the duration of her employment. Respondent knew that various personal expenses he chose to allocate as professional or business expenses should not be charged to the firm or to client accounts, yet he did so anyway for his personal benefit.   Finally, although it is not clearly stated in the stipulated facts that Respondent knowingly and intentionally violated the firm's 'Outside Work' policy by establishing TCR as a personal venture, his misuse of firm resources to prepare documents in furtherance of a business created for his personal gain reflects added dishonesty."

Thus, the petitioner believes that the above described actions demonstrate that the respondent's conduct, being at the least intentionally dishonest and involving misrepresentation, merits

a more substantial sanction, and preferably, the ultimate sanction of disbarment. For this proposition, the petitioner relies on *Attorney Griev. Comm'n v. Garcia*, 410 Md. 507, 521, 979 A.2d 146, 154 (2009) and *Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001).

In *Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001), we stated the rule:

"Upon reflection as a Court, in disciplinary matters, we will not in the future attempt to distinguish between degrees of intentional dishonesty based upon convictions, testimonials or other factors. Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

"Disbarment ordinarily should be the sanction for intentional dishonest conduct. With our opinion today, we impress upon the members of the bar that the Court does not consider Hess or the pre-Kenney cases to be authority for an argument for leniency in attorney disciplinary matters involving intentionally dishonest conduct."

Based on that rule, in *Garcia*, 410 Md. at 521, 979 A.2d at 154, we opined "[w]hen an attorney's conduct involves intentional dishonesty, fraud, deceit or misrepresentation, we do not discuss 'degrees' of dishonesty, but generally order disbarment, absent compelling extenuating circumstances." Alternatively, relying on *Attorney Griev. Comm'n v. Sweitzer*, 395 Md. 586, 606, 911 A.2d 440, 452 (2006), the petitioner asks this Court to suspend the respondent indefinitely from the practice of law.

That the respondent has also admitted engaging in conduct that constituted a conflict of interest is further reason, the petitioner submits, for not reciprocating the District of Columbia sanction of a sixty day suspension.

The misconduct and the Rules violations having been admitted by the respondent and, indeed, having been finally adjudicated in a disciplinary hearing, thereby being rendered conclusive proof that the respondent engaged in misconduct, Maryland Rule 16–773(g);[5] *Attorney Griev. Comm'n v. Scroggs,* 387 Md. 238, 249, 874 A.2d 985, 992 (2005); *Attorney Griev. Comm'n of Maryland v. Ayres–Fountain,* 379 Md. 44, 56–57, 838 A.2d 1238, 1245 (2003); *Attorney Griev. Comm'n v. Cafferty,* 376 Md. 700, 703–704, 831 A.2d 1042, 1045–46 (2003); *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 325, 697 A.2d 83, 87–88 (1997); *Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 221–222, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 425, 550 A.2d 1150, 1152 (1988); *see also Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 482 A.2d 497 (1984), the only issue left to be decided is the appropriate sanction.

This is, as indicated, a reciprocal discipline case. In such cases, although, by its terms, Rule 16–773(g) limits challenges to the original adjudication in reciprocal discipline cases to "notice and opportunity to be heard" or "infirmity of proof," *see Attorney Griev. Comm'n v. Roberson,* 373 Md. 328, 354, 818 A.2d 1059, 1075 (2003), either of the parties to the proceedings may show "why corresponding discipline or inactive status should not be imposed." Maryland Rule 16–773(c). That is, we pointed out in *Ayres–Fountain,* 379 Md. at 56–57, 838 A.2d at 1245, the purpose of the requirement on the Court to issue a show cause order. Indeed, the Rule prescribes the

---

**5.** Maryland Rule 16–773(g) provides:

"Conclusive Effect of Adjudication. Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed."

exceptional circumstances that will allow for avoidance of reciprocal discipline. Section 16–773(e) provides:

"Exceptional Circumstances. Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

"(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

"(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

"(3) the imposition of corresponding discipline would result in grave injustice;

"(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

"(5) the reason for inactive status no longer exists."

This Court's treatment of the imposition of sanction aspect of reciprocal discipline cases is well-settled. We reiterated it in *Weiss:*

"It is a well established principle in this State that this Court is 'inclined, but not required, to impose the same sanction as that imposed by the state in which the misconduct occurred. We are required to assess for ourselves the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission.' *Scroggs,* 387 Md. at 254, 874 A.2d at 995 (citations omitted); *see also Attorney Griev. Comm'n v. Steinberg,* 385 Md. 696, 704 n. 9, 870 A.2d 603, 608 n. 9 (2005) (stating that " '[w]e are prone, but not required, to impose the same sanction' ") (citations omitted); *Ayres–Fountain,* 379 Md. at 57, 838 A.2d at 1246; *Cafferty,* 376 Md. at 727, 831 A.2d at 1058 (stating that '[w]e tend to, but are not required to, impose the same sanction') (citations omitted); *Attorney Griev. Comm'n v. Roberson,* 373 Md. 328, 355, 818 A.2d 1059, 1076 (2003); *Attorney Griev. Comm'n v. McCoy,* 369 Md. 226, 236, 798 A.2d 1132, 1137–38 (2002) (stating that '[t]his Court has often imposed

sanctions, in reciprocal discipline cases, of facially equal severity to those imposed by a sister state. We have pointed out, however, that there is no requirement that this should be done') (citations omitted); *Attorney Griev. Comm'n v. Ruffin,* 369 Md. 238, 253, 798 A.2d 1139, 1148 (2002); *Attorney Griev. Comm'n v. Dechowitz,* 358 Md. 184, 192, 747 A.2d 657, 661 (2000); *Attorney Griev. Comm'n v. Richardson,* 350 Md. 354, 371, 712 A.2d 525, 533 (1998); *Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 83, 710 A.2d 926, 934 (1998); *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 325, 697 A.2d 83, 88 (1997); *Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 221–22, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Saul,* 337 Md. 258, 267, 653 A.2d 430, 434 (1995). The fact that we are 'inclined,' 'prone,' or 'tend to' and 'often' impose the same sanction is not determinative in this case. The explicit reluctance of the Court to adopt a blanket rule of reciprocity provides that we must look at each case individually and decide whether to deviate from the original jurisdiction's sanction, and in this case we do so."

389 Md. at 546–47, 886 A.2d at 615.[6]

Having stated the general rule, we attempted to give guidance as to when we should or would withhold deference to the sanctioning court's judgment. Our approach was to survey our cases and, from them, try to distill a workable standard or rule. We started with our statement of the rule in *Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142, 527 A.2d 325, 330 (1987):

"When the Court considers the appropriate sanction in a case of reciprocal discipline, we look not only to the sanction

---

**6.** More than three years earlier, as we shall see, the statement of the rule included, as a goal, achieving "consistent dispositions for similar misconduct," *Attorney Griev. Comm'n of Maryland v. Ruffin,* 369 Md. 238, 254, 798 A.2d 1139, 1148 (2002), *citing Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 222, 665 A.2d 1059, 1061 (1995) (*quoting Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142, 527 A.2d 325, 330 (1987)), and a reference to deferring to the sanctioning State when the two States' purpose in disciplining counsel is the same. *Ruffin,* 369 Md. at 254, 798 A.2d at 1148, *citing Gittens,* at 327, 697 A.2d at 88.

imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct,"

which, we said, "is in agreement with our duty to protect the public, gives appropriate deference to our sister jurisdictions and ensures that every member of the Maryland Bar is subject to the same sanctions for similar conduct." *Weiss,* 389 Md. at 548, 886 A.2d at 616. Acknowledging that no issues are raised when the sanction would be the same in both jurisdictions, *Weiss,* 389 Md. at 547, 886 A.2d at 615 (discussing *Willcher,* 340 Md. 217, 665 A.2d at 1059, and *Roberson,* 373 Md. at 355–56, 818 A.2d at 1076); *Cafferty,* 376 Md. at 727, 831 A.2d at 1058; *Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 171, 482 A.2d 497, 498 (1984) *Attorney Griev. Comm'n v. Bettis,* 305 Md. 452, 455, 505 A.2d 492, 493 (1986), the Court recognized that is not the case when the sanctions imposed by one jurisdiction would be different from that imposed by the other. *Weiss,* 389 Md. at 548, 886 A.2d at 615–16. The Court was concerned that, in the latter case, the emphasis on the "view toward consistent dispositions for similar misconduct" would skew the attorney discipline scheme in Maryland to the point where it could not be ensured that all members of the Maryland Bar are subject to the same standards. *Id.* at 548, 886 A.2d at 616, (discussing *Ayres–Fountain,* 379 Md. at 59, 838 A.2d at 1247; *Gittens,* 346 Md. at 327, 697 A.2d at 88–89). Indeed, we thought it "conceivable that adopting a strict reciprocal discipline policy, in some instances, would result in grossly unfair results and might encourage some Maryland attorneys to turn themselves in to the disciplinary authorities of other jurisdictions where they are a member of the bar, to avoid the results of direct action by Maryland's processes." *Weiss,* 389 Md. at 549, 886 A.2d at 616. We held:

"There is no doubt that this Court will not tolerate theft by a member of the bar from clients, partners, or third-parties. It would be grave injustice in allowing a member of this Bar to commit such an offense and be given a lesser sanction

because another jurisdiction did so, while other members of the Maryland Bar would be sanctioned more severely." *Weiss,* 389 Md. at 555, 886 A.2d at 620. In support of this holding, we relied on the well-settled rule, stated by *Bar Ass'n v. Marshall,* 269 Md. 510, 519, 307 A.2d 677, 682 (1973),

> "[I]t is essential that all members of the legal fraternity be strongly and constantly impressed with the truism that in handling moneys and properties belonging to their clients or others that they accept them in trust and are strictly accountable for their conduct in administering that trust, so they dare not appropriate those funds and properties for their personal use. The misappropriation by an attorney of funds of others entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct[,]"

and endorsed and reiterated by subsequent cases. *See e.g., Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001); *In Attorney Griev. Comm'n v. White,* 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991). In addition, we offered examples, post-*Vanderlinde* and Gittens,[7] of the Court's implementation of this Rule: *Attorney Griev. Comm'n v. Vlahos,* 369 Md. 183, 186, 798 A.2d 555, 556 (2002) (disbarring attorney, who, for more than a year, converted firm funds to his own use); *Attorney Griev. Comm'n v. Spery,* 371 Md. 560, 810 A.2d 487 (2002) (disbarring attorney for conversion of money from his partners); *Attorney Griev. Comm'n v. Post,* 379 Md. 60, 839 A.2d 718 (2003) (disbarring attorney for two instances of misappropriation of funds).[8] *Weiss,* 389 Md. at 553–54, 886 A.2d at 618–19

---

7. The Court concluded that the *Weiss* misconduct was similar not only to *Vanderlinde,* but also to *Attorney Griev. Comm'n v. Ezrin,* 312 Md. 603, 604, 541 A.2d 966 (1988), a pre-*Vanderlinde* case. *Weiss,* 389 Md. at 554, 886 A.2d at 619. There, the attorney stole $200,000.00 from his partners over a period of three years. He was disbarred.

8. *Attorney Griev. Comm'n v. Goodman,* 381 Md. 480, 850 A.2d 1157 (2004) (attorney was disbarred after intentionally impersonating another attorney).

As we have seen, the petitioner, relying on *Attorney Griev. Comm'n of Maryland v. Garcia*, 410 Md. 507, 512, 979 A.2d 146, 149 (2009), *reinstatement granted sub nom. In re Garcia*, 430 Md. 640, 62 A.3d 728 (2013), and *Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488, urges the respondent's disbarment. Although, in *Vanderlinde*, the attorney was charged with misappropriation of funds, a violation for which, almost without exception, both pre-, but *see, e.g. Bakas*, and post-, *see Attorney Griev. Comm'n v. Seltzer*, 424 Md. 94, 34 A.3d 498 (2011), *Vanderlinde*, disbarment inexorably follows, we stated the rule rather more broadly: "Disbarment ordinarily should be the sanction for intentional dishonest conduct." *Garcia*, 410 Md. at 533, 979 A.2d at 162 quoting *Attorney Griev. Comm'n v. Ward*, 396 Md. 203, 218, 913 A.2d 41, 50 (2006). We reiterated this broad rule in *Garcia*, emphasizing, citing *Vanderlinde*, that "[w]hen an attorney's conduct involves intentional dishonesty, fraud, deceit or misrepresentation, we do not discuss 'degrees' of dishonesty, but generally order disbarment, absent compelling extenuating circumstances." 410 Md. at 521, 979 A.2d at 154.

In *Garcia*, the attorney, knowing that his client did not have the employment background and experience needed to qualify for a position as an alien worker, signed a letter, drafted by his co-conspirator, that falsely stated that his client had been employed in the field in the Philippines from October 1995 until June 1998. *Id.* at 516–17, 979 A.2d at 151–52. He signed the letter in the name of the client's purported employee and when he did so, he was aware that it would be filed with the then Immigration and Naturalization Services (INS), now Citizenship and Immigration Services (CIS), and would be used to decide the client's alien worker petition. *Id.* at 512, 979 A.2d at 149. Agreeing with the hearing judge's finding and conclusion that "[Mr. Garcia's] action of signing the letter was clearly intended to commit a fraud, deceive, or misrepresent," the Court concluded that the *Vanderlinde* dictates were applicable, with the result that, absent compelling extenuating circumstances, disbarment would be ordered. *Id.* at 522, 979

A.2d at 155. It determined that there were no compelling extenuating circumstances in that case.

The petitioner recognizes, as did the *Garcia* Court, that, post *Vanderlinde*, where the misconduct involves "intentional dishonest conduct," but not misappropriation, the *Vanderlinde* "bright-line admonition" has not always been applied. It identifies three cases in which, although the attorney was found to have engaged in intentional dishonest conduct and, thus, to have violated MLRPC 8.4(c), a sanction other, and lesser, than disbarment was imposed. In two of the cases, *Attorney Griev. Comm'n v. Potter*, 380 Md. 128, 844 A.2d 367 (2004) and *Attorney Griev. Comm'n v. Floyd*, 400 Md. 236, 929 A.2d 61 (2007), the sanction ordered was a 90–day suspension. In the third, *Attorney Griev. Comm'n v. Sweitzer*, 395 Md. 586, 605–606, 911 A.2d 440, 451–52 (2006), it was an indefinite suspension.

In *Potter*, the attorney left the firm by which he had been employed and established his own sole practice, taking with him two of the firm's clients, whose files he deleted, without the firm's permission, from the firm's office computers. 380 Md. at 136–37, 844 A.2d at 371–72. This conduct was not found by the hearing court to be a violation of MLRPC 8.4(c), but that conclusion was overruled by this Court upon bar counsel's exception. 380 Md. at 156, 844 A.2d at 383. In *Floyd*, the Rule 8.4(c) violation consisted of Floyd's failure to disclose, among other things, that the letter to the FTC, from her current employer and primary reference, which indicated a willingness to pay $55,000 per year to retain her services and which resulted in the FTC raising her starting salary from $42,724 per year to $51,269 per year, was from her husband. 400 Md. at 251–252, 929 A.2d at 70. In neither case did we apply *Vanderlinde* as dispositive. *Potter*, 380 Md. at 161–64, 844 A.2d at 386–88; *Floyd*, 400 Md. at 246, 929 A.2d at 66. *See Garcia*, 410 Md. at 526–27, 979 A.2d at 157–58.[9]

---

9. As an additional basis for distinguishing *Potter* and *Floyd*, the Court looked to see whether it or the hearing court had made an "explicit finding of intent to defraud." *Garcia*, 410 Md. at 521–22, 979 A.2d at

The misconduct in which the attorney in *Sweitzer* engaged and which resulted in his being found to have violated MLRPC 8.4(c) was, without authorization, signing his estranged wife's signature on a Motor Vehicle Administration Gift Certification form and using that form in an attempt to transfer title to the vehicle and thereby avoid the payment of sales taxes and the inspection of the vehicle. *Sweitzer*, 395 Md. at 593, 911 A.2d at 444. Agreeing with the hearing court's findings and conclusions relative to MLRPC 8.4(c), we characterized Sweitzer's conduct as "egregious," being "intentionally deceitful and motivated by pecuniary interest."

---

154–55. With respect to *Attorney Griev. Comm'n v. Potter*, 380 Md. 128, 151, 844 A.2d 367, 380 (2004), conceding that it overruled the hearing court's conclusion that Potter had not violated Rule 8.4(c), it stated that "we did not conclude that Potter had exhibited an intent to defraud." *Id.* at 526, 979 A.2d at 157. Although we agreed with the hearing court that "[Floyd] did not explicitly misstate any fact ... [but] the law recognizes that deceit can be based on concealment of material facts as well as on overt misrepresentations," we said that "a 90–days suspension was appropriate, in the absence of an explicit finding of an intent to defraud." *Id.* at 526–27, 979 A.2d at 158. We took a similar approach in *Attorney Griev. Comm'n v. Sweitzer*, 395 Md. 586, 911 A.2d 440 (2006), although, in that case, we stated expressly:

"In the case sub judice, Respondent's conduct constituted an attempt to defraud the State of Maryland and the MVA to avoid payment of the sales tax; Judge Beachley found that Respondent submitted the form under the penalties of perjury 'attempting to avoid paying the 5% sales tax and having the vehicle inspected.... Respondent's presentation of the Gift Certification Form was an attempt to deceive the MVA by misrepresenting the true nature of the transfer of the Tahoe.' Respondent presented the Gift Certification Form to the MVA for a vehicle he purchased at auction, knowingly misrepresenting both the nature of the transaction and his authority to sign the form on behalf of his former wife. Judge Beachley also determined that 'Respondent knew that the transfer was not as a result of a gift and the reasonable inference is that he did not attempt to obtain Ms. Kepple's signature or express authority to sign on her behalf because Respondent knew Ms. Kepple would not comply.

"Regardless of the relatively modest nature of the financial benefit that Respondent could have gained, his conduct, intentionally deceitful and motivated by pecuniary interest, was egregious."

*Id.* at 603, 911 A.2d at 450.

MLRPC 8.4(c) proscribes "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." The focus of the *Vanderlinde* test is "intentional dishonest conduct." The misconduct found in each of the three cases met that test.

*Sweitzer,* 395 Md. at 603, 911 A.2d at 450. Nevertheless and despite the lack of findings with respect to mitigation, we imposed, as the appropriate sanction, an indefinite suspension. *Id.* at 606, 911 A.2d at 451–52. As justification, we noted the respondent's lack of a disciplinary record and that, although there were two violations, they "are not the result of a pattern of misconduct; the two violations occurred two years apart." *Id.* at 605, 911 A.2d at 451.

The case most analogous to *Garcia* is, as we recognized in *Garcia, Attorney Griev. Comm'n v. Wingerter,* 400 Md. 214, 929 A.2d 47 (2007), *reinstatement granted sub nom. In re Reinstatement of Wingerter,* 430 Md. 7, 59 A.3d 504 (2013). There, Wingerter, the in-house counsel of a recruitment and immigration services company, pled guilty to misprison of a felony. *Wingerter,* 400 Md. at 216, 929 A.2d at 49. Based on the statement of facts in support of the plea, which detailed the circumstances in which the crime occurred, the hearing court found, and this Court confirmed, that the respondent admitted being aware of facts indicating that the named co-defendants were engaging in immigration fraud, making false statements and encouraging aliens to enter this country ille-gally, not reporting those crimes to the proper authorities, and taking steps to conceal the conspiracy. *Wingerter,* 400 Md. at 231–232, 929 A.2d at 51. From these admissions and with the active concealment as a predicate, Wingerter was found to have engaged in conduct in violation of Rule 8.4(b)—of helping and counseling violators as to how to conceal their violations, a criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness in other regards—and (c), in so doing, also engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. *Id.* at 230–31, 929 A.2d at 57–58. We applied the *Vanderlinde* test and, noting that "[t]he respondent's past 'stellar' practice, his pro bono commitment, his lack of pecuniary over-reaching or motivation and his mentoring, while all are commendable and are not disregard-ed, do not meet the standard we have set for compelling extenuating circumstances that would justify a lesser sanction than disbarment," adopted the petitioner's disbarment recom-

mendation. *Id.* at 236, 929 A.2d at 60. Indeed, *Sweitzer* is more akin, factually and sanction-wise, to *Garcia* and *Wingerter* than is the case *sub judice.* As in those cases, Sweitzer engaged in dishonest behavior by attempting to defraud a governmental entity, in that case, the State of Maryland, rather than, as in *Garcia* and *Wingerter,* the immigration agency, and albeit for his own, rather than a client's benefit. The conduct in which the respondent herein engaged was dishonest, to be sure, but it does not rise to the level of that engaged in by the attorneys in *Garcia, Wingerter* and *Sweitzer.*

The misconduct in which the respondent engaged and which constitutes the MLRPC 8.4(c) violation in this case is more closely aligned with the misconduct sanctioned in *Potter* and *Floyd* than that at issue in *Garcia, Wingerter* and *Sweitzer.* And, like *Potter* and *Floyd,* the respondent does not have any disciplinary history; he has not previously been the subject of a disciplinary complaint. Nor do we believe that the charges in this case, admittedly multiple, reflect a pattern. In this respect, then, the respondent's case is, again, like Potter's and Floyd's, as well as Sweitzer's. Moreover, the respondent has been found by the hearing committee of the Board of Professional Conduct, confirmed by the District of Columbia Court of Appeals, to be "sincere in his regret and [to have] taken steps to remedy his violations and prevent recurrences."

Under these circumstances, we do not believe disbarment or an indefinite suspension to be the appropriate sanction. On the other hand, the conduct in this case is more extensive and, thus, more serious than that in both *Potter* and *Floyd.* Accordingly, considering the respondent's conduct and the mitigating factors found to be present, we believe the appropriate sanction to be a suspension from the practice of law for six months.

IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH

SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GARLAND HOWE STILLWELL.